Thomas M. FORTUIN, Plaintiff,

v.

Thomas H. MILHORAT, et al., Defendants.

Civ. A. No. 87–2103 JHP.

United States District Court, District of Columbia.

April 14, 1988.

Steven B. Chameides, Washington, D.C., for plaintiff.

Steven M. Pavsner, Andrew E. Greenwald, Hyattsville, Md., for defendants.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

In this action plaintiff, Thomas Fortuin, alleges that he entered into a binding agreement with defendant, Thomas Milhorat, to purchase the latter's house in the Georgetown section of the District of Columbia. Plaintiff concedes that the parties did not execute a written contract. Instead, plaintiff weaves his contract claim out of various agreements and oral representations which, in his opinion, amounted to an oral commitment to enter into a written agreement enforceable under the law

of the District of Columbia.[1] Plaintiff initially filed this action in Superior Court of the District of Columbia, naming as defendants Milhorat as well as Mark Peltz, the agent with whom Fortuin allegedly conducted negotiations for the purchase of the Georgetown residence. Defendants, New York residents both, promptly removed the case to this court, predicating jurisdiction on the diversity between the parties. 28 U.S.C. §§ 1441 (federal removal jurisdiction), 1332 (diversity jurisdiction).

Less than a month after the suit was removed, plaintiff moved to amend his complaint in order, *inter alia*, to add two defendants: Kevin Schlosberg, who negotiated a written agreement for the purchase of the Georgetown home subsequent to plaintiff's dealings over the same property, and W.C. & A.N. Miller Realtors, the real estate company with whom Schlosberg conducted his own negotiations for the Georgetown property. This court granted plaintiff's motion to amend, relying primarily on plaintiff's representation that both new defendants were residents of the District of Columbia, and hence that diversity would not be destroyed.

Plaintiff has now learned, and has informed the court, that Mr. Schlosberg is in fact a resident of the District of Columbia. Because it now appears as if he and Schlosberg claim the same citizenship, plaintiff insists that diversity is lacking. Accordingly, plaintiff moves to have this action remanded to Superior Court, the forum of plaintiff's initial choosing.

### Discussion

■■■ As noted above, removal of the present action from Superior Court was premised on this court's diversity jurisdiction. 28 U.S.C. § 1332. The "diversity" contemplated by this provision is complete diversity, that is, each plaintiff must sport a citizenship different from each defendant. *Owen Equipment & Erection Co. v. Kro-*

*ger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It is widely recognized that once diversity is established, and removal is thus appropriate, a plaintiff cannot ordinarily defeat removal by his own actions. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938); *Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985); *Filippini v. Ford Motor Co.*, 110 F.R.D. 131, 133 (N.D.Ill.1986). To condone such maneuvers would effectively deprive defendants who satisfy the prerequisites of removal of their right to a federal forum. This rule has been applied to situations in which a plaintiff seeks to add defendants whose presence in the action would jeopardize the court's diversity jurisdiction. *Filippini v. Ford Motor Co.*, 110 F.R.D. at 133; *Pacific Gas & Electric Co. v. Fibreboard Products, Inc.*, 116 F.Supp. 377, 381 (N.D.Cal.1953). In such a case, a plaintiff must put forward a persuasive argument to overcome defendants' interest in a federal forum.

■■■ The present case is somewhat distinct from those previously cited in that Schlosberg has already been joined as a party defendant. In approving plaintiff's motion for addition of parties, the court relied on plaintiff's mistaken representation that Schlosberg was a Maryland citizen, and hence that diversity would not be jeopardized. The record does not reflect whether plaintiff knew or should have known, at the time he initiated this action, that Schlosberg had separately contracted with Milhorat for the purchase of the Georgetown property, and thus should have been made a party to this action, if at all, from the start. Nor is there any suggestion that plaintiff concealed Schlosberg's actual citizenship.[2] Moreover, as

---

1. This case is governed by the law of the District of Columbia, which, among other things, is the situs of the property at issue, the residence of plaintiff, and the place where process was issued.

2. Plaintiff's amended complaint states that Schlosberg's place of residence "is unknown,

but on information and belief is not in the District of Columbia." Amended Complaint ¶ 7. It may be that plaintiff first learned of Schlosberg's actual residence in the latter's answer to the amended complaint. Schlosberg Answer at ¶ 5. Defendant did not oppose the addition of the party defendants, provided "said amend-

discussed in greater detail below, plaintiff has a sound basis for electing to add Schlosberg as a party defendant. For these reasons, we are unable to conclude that plaintiff joined Schlosberg at this time to defeat diversity and force a remand to his initially chosen forum. *See Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d at 819 n. 3 (examining plaintiff's motive in seeking to join party defendant); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1376 (9th Cir.1980) (same); *Filippini v. Ford Motor Co.*, 110 F.R.D. at 138 (same).

■ Of course, the court is not powerless to remedy the misjoinder of parties. Rule 21 of the Federal Rules of Civil Procedure provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." The misjoinder contemplated by this provision is generally thought to include the situation, presented here, where plaintiff has unwittingly joined a party whose presence in the action destroys diversity jurisdiction. *See, e.g.*, 7 C. Wright & A. Miller & M. Kane, *Federal Practice and Procedure* [hereinafter "Wright & Miller"] § 1684, at 453 (2d ed. 1986).[3] Rule 21 provides a means of correcting this error, not by dismissing the action,[4] but by dropping a party and thus preserving jurisdiction. Such a resolution is available, however, only if the misjoined party's presence in the action is not "needed for just adjudication" as defined by Rule 19.

We thus take up the present matter at what would have been our initial focal point had plaintiff properly identified Schlosberg's place of citizenship: namely,

Rule 19's two-pronged analysis for joinder of parties. Rule 19(a) provides for the joinder of non-parties related in various ways to the action, and "whose joinder will not deprive the court of jurisdiction over the subject matter of the action...." In the instant action it is undisputed, and indisputable, that Schlosberg's joinder in this action jeopardizes the court's subject matter jurisdiction. We thus turn next to Rule 19(b), which instructs the court to determine whether an individual whose joinder is not feasible under Rule 19(a) is nevertheless "indispensable" to the adequate processing of the action. If the individual (in this case, Schlosberg) is deemed "indispensable," then the action cannot proceed without his presence, and must therefore be dismissed. Fed.R.Civ.P. 19(b).

Rule 19(b) and the advisory committee's note on the rule articulate a number of factors which, while not exhaustive, assist courts in determining whether an individual is indeed "indispensable" to the action. The confluence of these factors compels the conclusion that Schlosberg is indeed an indispensable party, and hence that the action must be dismissed. The first relevant factor is whether "a judgment rendered in the person's [*i.e.*, Schlosberg's] absence might be prejudicial to the person or those already parties...." In this case both Fortuin and Schlosberg claim title to the Georgetown property, the former by oral contract and the latter by written purchase agreement. Because this court can make a legally binding adjudication "only between the parties actually joined in the action," Fed.R.Civ.P. 19 advisory committee's note (West 1987) at 55, a judgment in favor of Fortuin would quiet title as between Fortuin and Milhorat, but not as between Fortuin and non-party Schlosberg. Indeed,

---

ments do not defeat jurisdiction of this Honorable Court." Defendant's Response to Motion to Add Defendants at 1. Defendants did not take issue, however, with plaintiff's assertion as to plaintiff's citizenship, nor is there reason to believe that defendants were privy to any better information on this point than plaintiff or the court.

**3.** It is irrelevant that plaintiff has not filed the present motion under Rule 21, for the very terms of the rule make plain that a Rule 21 analysis may be undertaken on the court's "own initiative." Fed.R.Civ.P. 21.

**4.** The first sentence of Rule 21 states that "[m]isjoinder of parties is not ground for dismissal of an action." This does not mean, of course, that dismissal might not ultimately prove to be the necessary result should the parties who might be dropped be deemed "indispensable" under Rule 19(b). *See generally* 7 Wright & Miller, *supra*, § 1685.

such a judgment might well be of little use, in the sense that the parties would not know at that point who actually maintains title (or the best title) to the property. In this important sense, then, a judgment rendered in Schlosberg's absence might well prejudice all involved. For the same reason, the court is notable, without Schlosberg's presence, to render a judgment "adequate" to protect the parties' rights. Fed. R.Civ.P. 19(b).

The advisory committee's note to Rule 19 casts these considerations in a slightly different light, directing the court to consider whether adjudication only as between the originally named parties "would adversely affect the absent person as a practical matter, or leave a party exposed to a later inconsistent recovery by the absent person." Advisory committee's note at 55; see also id. at 57 (considering whether any party would be exposed to a fresh action by the absentee, and the seriousness of the threat of such a future action). Assuming again that Fortuin prevails against Milhorat, it is evident that Schlosberg could well obtain a later judgment in another court honoring his written contract. Because the subject matter of these actions is real estate, Schlosberg, like Fortuin, would likely be entitled to specific performance, given the recognition accorded by District of Columbia law to the unique nature of each parcel of land. See 1010 Potomac Ass'n v. Grocery Mfrs. of America, 485 A.2d 199, 212 (D.C.1984); Flack v. Laster, 417 A.2d 393, 400 (D.C.1980). In this scenario Schlosberg would have obtained a recovery "inconsistent" with that secured by Fortuin, exposing the parties to the dilemma of determining which party in fact is entitled to the property.

Of considerable importance in the "pragmatic" approach proposed by Rule 19 is that the aforementioned dilemmas can readily be rectified by remitting the parties to adjudication in the District of Columbia state courts. Advisory committee's note at 55 (examine case "pragmatically"), at 56 ("pragmatic considerations"), at 57 (consider whether "plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible"). There is no dispute as to the amenability of all parties here to service within the District of Columbia and jurisdiction of the District of Columbia courts. Indeed, when, as here, an action features a dispute over real property, the state court is not only an "adequate" forum, Fed.R.Civ.P. 19(b), but perhaps a superior forum for the litigation of the parties' rights and obligations. See Broussard v. Columbia Gulf Transmission Co., 398 F.2d 885, 888–89 (5th Cir.1968) (in requiring joinder of a cotenant, court emphasizes superiority of litigation in Louisiana state court, since "the suit involves activity of real property in which the State of Louisiana, rather than the federal judiciary, has a fundamental concern"); Republic Realty Mortgage Corp. v. Eagson Corp., 68 F.R.D. 218, 222 (E.D.Pa. 1975) (a foreclosure action not only could be brought in state court, but "should be, as it involves real property"). It is the state court, after all, which is most familiar with the nuances of District of Columbia property law, and which manifests a "special concern ... for the ownership and utilization of its land...." 7 Wright & Miller, supra, § 1621, at 305; Republic Realty Mortgage Corp. v. Eagson Corp., 68 F.R. D. at 222.[5]

For all the foregoing reasons, the court concludes that Schlosberg is an indis-

---

5. Defendants Milhorat and Peltz suggest that the court realign the parties in such a way as to preserve the court's diversity jurisdiction. Defendant contends that Fortuin and Schlosberg could reasonably be viewed as sharing an identical "ultimate interest," that being a declaration of their respective rights vis-a-vis the subject property. See City of Indianapolis v. Chase National Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941); International Ins. Co. v. Virginia Ins. Guaranty Ass'n, 649 F.Supp. 58, 60 (E.D. Va.1986). We decline defendant's invitation.

Fortuin's and Schlosberg's interests might more reasonably be understood as being diametrically opposed. Both seek indivisible title to the Georgetown property; hence, if Fortuin wins, Schlosberg loses, and vice versa. It is true that both are interested in a declaration as to their respective rights to the property; but Milhorat would share this interest as well. Indeed, under defendant's proposed approach to realignment, all parties to any declaratory judgment action could be realigned in any way that might create or preserve jurisdiction.

pensable party to the proper adjudication of this action.[6] The remaining question, then, becomes whether the court should dismiss the action, as suggested by defendants, or remand the action to Superior Court, as favored by plaintiff. The emergence of an indispensable but nondiverse party to an otherwise properly removed action not only divests the court of jurisdiction, but warrants remand to the state court. *Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d at 819; *Adorno Enterprises v. Federated Dep't Stores*, 629 F.Supp. 1565, 1573 (D.R.I.1986); *Lamar Haddox Contractor, Inc. v. Potashnick*, 552 F.Supp. 11, 14 (M.D.La.1982). Where, as here, an action which concerns fundamental issues of state law was initially filed in state court, could still be maintained in state court, and could survive the joinder of all interested parties, the appropriate solution is to remand to the state court from whence the case arose. This alternative is particularly desirable in the present context of a young case in which discovery has just begun. *Takeda v. Northwestern National Life Ins. Co.*, 765 F.2d at 821 (remanding for these reasons). Judicial efficiency will be promoted if all adverse claims of title held by Fortuin, Milhorat and Schlosberg are lodged in a single forum, and adjudicated by a single judge familiar with the governing principles of law. This can be accomplished by a remand.

For all the foregoing reasons, it is by the court this 13th day of April, 1988

ORDERED that plaintiff's motion for remand is hereby granted, and it is

ORDERED that this action be remanded to the Superior Court for the District of Columbia.

---

**6.** Prior to filing the present motion to remand to the state court, plaintiff had moved to dismiss two counterclaims asserted by defendant Milho-rat. Given our disposition of the motion to remand, we have no occasion to reach the issues presented in this unrelated motion.