E. Keene WOLCOTT, et al., Plaintiffs,

v.

David GINSBURG, et al., Defendants.

Civ. A. No. 85–1088.

United States District Court,
District of Columbia.

Aug. 7, 1990.

Brock R. Landry, Robin W. Grover, Keck, Mahin & Cate, George E. Weaver, Chicago, Ill., for plaintiffs.

John P. Arness, Jamie M. Bennett, L. Anthony Sutin, Hogan & Hartson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiffs bring this legal malpractice action for breach of fiduciary duty, negligence and fraudulent concealment. This matter comes before the Court on defendant law firm's second motion for summary judgment. Upon consideration of defendants' motion, plaintiffs' opposition thereto, the entire lengthy record in this case, and for the reasons stated below, defendants'

motion is granted in part and denied in part. Summary judgment is entered in favor of defendants with respect to any recovery from the Marks–Miron financial arrangement. In all other respects defendants' second motion for summary judgment is denied.

### Background

The essential facts are fully set forth in this Court's Memorandum Opinion of September 23, 1988, 697 F.Supp. 540, and need only be summarized here. Plaintiffs E. Keene Wolcott and Daniel B. Nelsen, Jr. are two of fourteen original limited partners who entered into a partnership known as "Desert Exploration '76" ("DE'76" or "the Partnership"). Plaintiffs bring this suit derivatively,[1] seeking to enforce alleged rights of the partnership against defendants.[2] DE'76 was created to profit from a contract with the State of Israel for the exploration, development and production of petroleum in an area of the Gulf of Suez. In February 1980, a contractual dispute arose between DE'76 and the State of Israel. DE'76 filed a request for arbitration and hired defendant law firm of Ginsburg, Feldman and Bress, Chartered ("GF & B" or "defendant law firm"), to represent the partnership in the arbitration proceeding. As part of its request for arbitration, DE'76 designated a party-appointed arbitrator, Professor Abram Chayes.

The Attorney General for the State of Israel notified DE'76 counsel in the Summer of 1982 that Israel intended to terminate the arbitration proceedings, based upon DE'76's failure to disclose, for more than two years, a "retainer agreement" between the Partnership and its party-appointed arbitrator.[3] Israel moved in the

---

1. On March 14, 1986, Judge Joyce Green ruled that plaintiffs could not bring suit on their own behalf but could bring this action derivatively on behalf of DE'76. (Order of March 14, 1986). Accordingly, plaintiffs filed an amended complaint on April 24, 1986.

2. Plaintiffs bring this suit against the remaining defendants, Ginsburg, Feldman and Bress, Chartered, and the individual members of the law firm.

3. Plaintiffs allege in their amended complaint that on or about February 15, 1980, defendants Myer Feldman and Lee Marks, and William White, also a general partner of DE'76, made "an unlawful payment of $10,000" to the party-appointed arbitrator, Professor Chayes. Defendants characterize the payment as a "retainer." Defendants Feldman and Marks are partners in the law firm of GF & B. Marks was the lead counsel on behalf of GF & B in the arbitration. Feldman was a general partner in DE'76 during at least some of the events in question.

District Court for Tel Aviv–Jaffa shortly thereafter seeking an order confirming the State's decision to terminate the arbitration. On July 30, 1982, the Tel Aviv–Jaffa District Court issued a decision holding that Israel's termination of the arbitration was proper.[4] Counsel for DE'76 filed an appeal to the Supreme Court of Israel. A ten million dollar settlement agreement was ultimately reached between the parties, and the appeal was withdrawn. In 1983 the Supreme Court in Jerusalem granted the parties' joint petition to vacate the decision of the Tel Aviv–Jaffa District Court, consistent with the terms of the DE–Israeli settlement agreement.[5]

The partnership voted to condition the distribution of proceeds from the Israeli settlement upon each partner's signing a release discharging the general partners of DE'76 and the Board of Directors of DE'76 from all future liability.[6] Each of the limited partners signed a release, and received their monies. After a "winding up" period of approximately seven months, the remaining assets were distributed to the partners, and the partnership was terminated. Plaintiffs filed this suit April 5, 1985, some eighteen months after the partnership was dissolved. The Verified Amended Complaint, filed April 26, 1986, asserts derivative claims on behalf of DE'76 against GF & B and its partners.[7]

Plaintiffs allege that the law firm defendants breached their fiduciary duty as attorneys (Count I), and acted negligently in their representation of DE'76 (Count II), by making the unlawful payment to the arbitrator and calling for funds to prosecute the arbitration without revealing the payment or the possible negative impact of its subsequent disclosure on the arbitration. Plaintiffs assert that as a result of defendants' actions they expended large amounts of funds in the terminated arbitration and accepted a settlement considerably lower than the value of their claims. Plaintiffs seek recovery of the difference between the value of DE'76's claims against Israel and the actual amount of settlement received as well as recovery of the expenses incurred by DE'76 in the arbitration. Finally, plaintiffs claim that defendants Myer Feldman and Lee Marks fraudulently concealed the existence of the allegedly unlawful payment. (Count V).[8] Plaintiffs seek recovery on behalf of the partnership in an amount in excess of $3,000,000 in compensatory damages and $1,000,000 in punitive damages.

## DISCUSSION

### I.  *Applicable Legal Standard*

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P.

---

4. The Tel Aviv–Jaffa District Court found 1) that the "retainer" should have been disclosed to Israel at the commencement of the arbitration in 1980; 2) that the retainer was not in fact disclosed to Israel until June 4, 1982; and 3) that the nondisclosure of the "retainer" constituted a breach of the arbitration agreement and justified Israel's termination of the arbitration.

5. As part of the settlement agreement, DE'76 agreed to release Israel from all claims and withdraw its appeal.

6. The releases state in pertinent part that the various parties "release and discharge the general partners of Desert Exploration–76 and the Board of Directors of Desert Exploration, Ltd. from any and all claims and demands in any way related to the conduct of the business of Desert Exploration–76, including, but not limited to, the distribution of proceeds."

7. On July 17, 1986 Judge Joyce Green denied the law firm defendants' motion to dismiss, rejecting their assertion that plaintiffs could not assert derivative claims on behalf of the partnership, as the partnership no longer existed. Judge Green held that the dissolved partnership could be revived for the purposes of settling of accounts or winding up of business. (Order of July 17, 1986). This Court, applying the "law of the case" rule, declined to revisit this argument in its Memorandum Opinion of September 23, 1988.

8. Counts III and IV, asserting claims against defendant Feldman in his capacity as a general partner of DE, were dismissed by this Court. (Order of September 23, 1988)

56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Since defendants, the party moving for summary judgment, have the burden of proving the lack of any genuine issue of fact, the Court must view the available facts in the light most favorable to plaintiffs. *Minihan v. American Pharmaceutical Association,* 812 F.2d 726, 727 (D.C.Cir.1987). At this stage in the proceeding, it is not our function to "weigh the evidence and determine the truth of the matter," but merely to decide whether there are any genuine issues that require a trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## II. *Defendants' Second Motion for Summary Judgment*

Defendants assert four arguments in support of their second motion for summary judgment. First, they contend that plaintiffs cannot establish that DE''76's settlement with Israel resulted in a lower recovery or was caused by defendant law firm's actions, arguing that DE''76 had alternative avenues for pursuing its claims against Israel, either in the courts of Israel or the United States. Second, defendants claim that plaintiffs cannot recover the legal fees and expenses paid by DE''76 to defendants in connection with the arbitration because they cannot establish that the $10 million settlement could have been reached without incurring the costs of the arbitration. Further, defendants assert that fees and expenses incurred after notice by Israel of the termination of the

arbitration were paid by DE''76 after disclosure of the allegedly improper payment by defendants.

Third, defendants contend that plaintiffs cannot assert derivative claims on behalf of DE''76 because they failed to make a demand upon the general partner of DE''76, in violation of Fed.R.Civ.P. 23.1, alleging that such a demand would be futile. Finally, defendants argue that summary judgment should be granted pursuant to Fed.R.Civ.P. 19, for failure to join DE''76 and its partners as indispensable parties. We find each of these arguments without merit.

### A. Attorney Malpractice

■ In the District of Columbia, the elements of an action for professional negligence are the same as those of an ordinary negligence action.[9] *Applegate v. Dobrovir, Oakes & Gebhardt,* 628 F.Supp. 378, 386 (D.D.C.1985) (citing *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C.App.1982)). A uniform standard of care applies in actions for negligence; reasonable care under the circumstances. *O'Neil,* 452 A.2d at 341. Moreover, a lawyer must "exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances." *Id.*

■ As defendants state, in attorney malpractice actions, plaintiffs bear the burden of presenting evidence "which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of." *O'Neil,* 452 A.2d at 341 (quoting *Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.App.1979)).

Specifically, we adopt the widely followed rule that, in a legal malpractice action, the plaintiff must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of

---

**9.** Subject matter jurisdiction in this case is premised on the diverse citizenship of the parties. 28 U.S.C. § 1332 (1988). This Court previously held that District of Columbia law would be applied. (Memorandum Opinion of September 23, 1988, at 7–8 n. 8).

fact can find negligence as a matter of common knowledge.

*Id.*

As to liability, plaintiffs have alleged expert testimony tending to show a violation of the applicable standard of care and defendants' violation of said standard. As damages, plaintiffs contend that they have made a sufficient showing that the claims of DE'76 had a value exceeding $20 million prior to disclosure of an unusual payment to Professor Chayes, and that the value was reduced by the late disclosure of said payment and resultant termination of the arbitration.[10] Plaintiffs offer both the required expert testimony (Affidavit of Lawrence F. Ebb, p. 6), and alleged representations by defendant Marks that the potential range of recovery was "from fifteen to twenty-five to fifty million dollars" (Deposition of William White, p. 69), and defendants Marks and Feldman that recovery from the arbitration would be a minimum of $11 to $15 million. *Id.*, p. 184–188. Basically, it is plaintiffs' claim that defendants' actions resulted in the termination of the arbitration, weakening DE'76's claims and causing plaintiffs to accept a much lower settlement figure. Viewing the facts in the light most favorable to the plaintiffs, a jury could fairly draw such an inference.

Defendants place great emphasis on their claim that their conduct, however characterized, did not cause plaintiffs any loss. Denying that the payment to the arbitrator was improper, asserting by way of defense that it was a "booking fee" and part of a retainer agreement between Professor Chayes and DE'76, Reply Memorandum of Law Firm Defendants at 4, they argue that, in any event, plaintiffs have failed to establish that any damage was caused by their alleged misconduct. They assert that at the time of the settlement DE'76's appeal of the Israeli court ruling was still pending, which appeal DE'76 might have won, or, if not, could have pursued its claims by bringing action in the United States. No such action is now avail-able since the mutual releases in the settlement agreement foreclose any further action against Israel. Defendants argue that plaintiffs, having elected to settle, rather than await the determination of the Supreme Court, cannot now recover for what might have been had they not agreed to settle. We disagree.

■■■ It is clear that resolution of an appeal is not necessarily the "definitive event triggering the required knowledge of injury, its cause, and related wrongdoing essential to the ripeness of a malpractice claim." *Knight v. Furlow,* 553 A.2d 1232, 1235 (D.C.App.1989) (Client may suffer legally cognizable injury as result of attorney's malpractice prior to time that adverse judgment resulting from that malpractice is affirmed on appeal). Plaintiffs argue persuasively that as a result of defendants' actions there was a substantial risk that efforts before the Supreme Court of Israel or a United States District Court would leave DE'76 totally without recovery. Plaintiffs' Memorandum in Opposition to Defendants' Second Motion for Summary Judgment at 26. Even if the appeal were successful and the arbitration continued with a substituted arbitrator, there was a risk of a claim by Israel of its costs in the terminated arbitration. *Id.*

As to suit in the United States, plaintiffs point out that the scope of relief in the United States would not be as broad as in the arbitration. *Id.* at 27. The prevailing party in the Israeli arbitration would have been entitled to recover its costs, including the fees and expenses of the arbitrators and attorneys, fees not recoverable in an action in the United States. "It would be unreasonable to require [plaintiffs] to pursue every possible cause of action ... as a prerequisite to suing the attorneys who deprived them of their primary cause of action...," *Winter v. Brown,* 365 A.2d 381, 384 (D.C.App.1976).

Plaintiffs cannot be faulted for settling. We do not accept the argument that a client sustains no actionable injury until

---

**10.** It is plaintiffs' contention that DE'76 had several claims for recovery in the arbitration proceeding which, including costs, attorneys' fees and expenses, totaled between $28–30 million.

affirmance on appeal of an adverse lower court ruling. *See Knight,* 553 A.2d at 1235. The bottom line is whether defendants' actions caused a reduction of plaintiffs' recovery. "Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." *Id.* (quoting *Luick v. Rademacher,* 129 Mich.App. 803, 342 N.W.2d 617, 619 (1983)).

We therefore cannot hold at this point in the proceedings that a reasonable jury could not find for plaintiffs on the issue of causation. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513. We turn now to consideration of plaintiffs' claim for the costs of the arbitration.

### 1. *Costs of the Arbitration*

■ Plaintiffs also seek recovery of the legal fees and expenses incurred by DE'76 in the arbitration itself as well as costs incurred challenging its termination. It is plaintiffs' contention that the arbitration was "rendered meaningless" by revelation of defendants' conduct, and but for that conduct, DE'76 would not have expended funds responding to Israel's withdrawal. Plaintiffs' Opposition at 30. Defendants argue that DE'76 cannot show that the $10 million settlement would have occurred without the costs of the arbitration.

In addition, defendants point to the fact that payment of defendant law firm's bills was withheld upon notification by Israel of its withdrawal from the arbitration.[11] These bills were not paid until authorized by the Board of Directors of DE Ltd., at that time the managing general partner of DE'76, after full disclosure of all the pertinent facts. Defendants appear to argue that the intervening action of the Board

somehow mitigates the impact of their alleged negligence.[12]

The question instead is whether plaintiffs incurred additional attorneys' fees and costs as a direct result of defendants' alleged negligent act. Plaintiffs have made a sufficient showing that however defendants viewed the payment to Professor Chayes, Israel and Judge Shilo perceived the non-disclosure of the payment as a breach serious enough to warrant the termination of the arbitration. A reasonable jury might well infer that both the termination of the arbitration and the cost of challenging that termination was a direct result of defendants' acts. "[A]ttorneys' fees and costs expended as a result of an attorney's alleged malpractice constitute legally cognizable damages for purposes of stating a claim for such malpractice." *Knight,* 553 A.2d at 1235. Therefore, defendants' second motion for summary judgment as it pertains to plaintiffs' claims for the costs of the arbitration and the challenge to its termination is denied. We turn now to the Marks–Miron financial arrangement.

### 2. *The Marks–Miron Arrangement*

■ During the course of the arbitration Eliahu Miron, DE'76's Israeli counsel, entered into a partial contingency fee arrangement with DE'76, accepting an investment in the arbitration fund as payment for $65,025 in legal fees and expenses. The contingency fee arrangement with Miron was disclosed to the DE'76 partners. Defendant Lee Marks then allegedly paid Miron $42,675 for a partial interest in the investment, ultimately receiving $121,744 from Miron's share of the settlement proceeds. Plaintiffs allege that the Marks–Miron arrangement was entered into without notice to plaintiffs and in fact was not revealed until after the filing of this case in an answer to one of plaintiffs' interrogatories. Plaintiffs' Memorandum in Opposi-

---

11. Following Judge Shilo's ruling upholding Israel's right to terminate the arbitration, William White withheld payment of defendant law firm's fees and sought to terminate them as counsel for DE'76. White withdrew from the partnership in February 1983. Defendant Law

Firm's Statement of Material Facts as to Which There is No Genuine Dispute at 23.

12. We declined to grant defendants' first motion for summary judgment on the basis of quasi-estoppel and reiterate that ruling now. (Memorandum Opinion, September 23, 1988 at 11–12.)

tion to Defendants' Second Motion for Summary Judgment, p. 32.

Plaintiffs contend that DE'76 is entitled to damages arising from defendant Marks' arrangement with Miron, arguing that it occurred during the course of the attorney client relationship of DE'76 and defendant law firm and as such, is subject to strict scrutiny. Defendants respond by asserting that DE'76 was not damaged by the Marks–Miron arrangement. Miron's contingency arrangement was disclosed to the partnership and only his share of the recovery from Israel was paid by the partnership. Miron then paid Marks a portion of his proceeds. Defendants argue that the private arrangement between Marks and Miron did not diminish the total amount available for distribution to the partnership.

Although we do not condone defendant Marks' questionable conduct, which could possibly subject him to disciplinary proceedings,[13] plaintiffs have failed to demonstrate any injury to DE'76 as a result of defendants' actions. DE'76 paid no more to Miron than had been agreed pursuant to the contingency fee arrangement. Plaintiffs fail to specify any injury or the nature of the damages sought to be recovered as a result of defendants' actions. Plaintiffs have therefore "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Accordingly, the Marks–Miron arrangement may not form the basis of recovery in this action,[14] and defendants'

motion for summary judgment with respect to this arrangement is granted.

## B. Failure To Make a Demand

■ In response to the ruling that plaintiffs bring this suit as a derivative action, plaintiffs filed their Verified Amended Complaint on April 26, 1986. Plaintiffs failed to make a demand on Desert Exploration, Ltd. ("DE Ltd."), the managing general partner of DE'76, alleging that such a demand would be futile and therefore should be excused. Defendants now urge the Court to dismiss the Amended Complaint for failure to comply with the demand requirements of Fed.R.Civ.P. 23.1.[15]

Rule 23.1 provides that parties bringing derivative actions must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or not making the effort." Demand on the directors is intended "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." *Lewis v. Graves*, 701 F.2d 245, 247 (2d Cir.1983) (quoting *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 450 (2d Cir.1978)) (citations omitted).

Defendants urge this Court to dismiss this amended complaint because of plaintiffs' failure to make a demand on DE Ltd. as the managing general partner of DE'76.

---

**13.** The District of Columbia Code of Professional Responsibility bars fee splitting without notice to the client. DR 2–107 provides in pertinent part:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made;

(2) The division is made in proportion to the services performed and responsibility assumed by each.

**14.** We note that while the Model Code of Professional Responsibility does not provide for a

direct private malpractice action, "violations of the Code certainly constitute evidence in an action at common law." *Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C.Cir.1990) (citing *Waldman v. Levine*, 544 A.2d 683, 690–91 (D.C. 1988)).

**15.** Plaintiffs also assert that defendants have waived this argument since it was not raised in defendants' earlier motions to dismiss and for summary judgment. Defendants argue that the demand issue is properly raised at this time since they assert that the allegations of the amended complaint on the demand issue are "factually inaccurate." Defendants' Memorandum at 39.

Such a demand is excused, however, if the demand would be "futile," "useless," or "unavailing." *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1017 (2d Cir. 1984) (citations omitted). Demand is presumptively futile "where the directors are antagonistic, adversely interested, or involved in the transaction attacked." *Lewis v. Graves*, 701 F.2d at 248; *see Abramowitz v. Posner*, 672 F.2d 1025, 1033 (2d Cir. 1982).

Plaintiffs allege that a demand on DE Ltd. would have been futile and should be excused in that: 1) both the general partner of DE'76, Levitt Overseas Exploration Associates, Ltd. ("LEOA"), and its general partner, DE Ltd., no longer existed at the time of the filing of this action; 2) at all times after plaintiffs learned of the unlawful payment to the arbitrator, DE Ltd. was owned by William White and defendant Feldman together or defendant Feldman alone; 3) defendant Feldman was the sole owner of DE Ltd. at the time it was dissolved; and 4) defendant Feldman was actively involved in the alleged wrongdoing and therefore could not be expected to bring suit against himself or his law partners.

Defendants contend that plaintiffs' allegations are factually inaccurate and legally insufficient to excuse the failure to make a demand. Defendants' Memorandum at 39. "The decision as to whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court." *Gaubert v. Federal Home Loan Bank Bd.*, 863 F.2d 59, 68 n. 10 (D.C.Cir.1988) (quoting *Lewis v. Graves*, 701 F.2d at 248); *see also Clark Enterprises, Inc. v. Holywell Corp.*, 559 F.Supp. 1307, 1310 (E.D.Va.1983); 7C Wright & Miller, *Federal Practice & Procedure*, § 1831 at 107 (1986). Viewing the available facts in the light most favorable to the plaintiffs, as we must at this stage of the proceedings, plaintiffs have demonstrated to the Court with the requisite particularity that a demand would have been futile. "When ... a plaintiff can provide the court with sufficient facts to justify an inference that the board is not worthy of that confidence and demand would be a pointless formality, the requirement may be excused as futile." *Gaubert*, 863 F.2d at 69. Plaintiffs persuasively argue that whatever the sequence of dissolution of the various corporations, defendant Feldman was both a dominant or sole shareholder of those corporations and a member of defendant law firm accused of malpractice. In both those roles he could well be considered a "director [who was] antagonistic, adversely interested or involved in the transaction attacked." *Lewis*, 701 F.2d at 248.

Therefore, we find defendants' argument that plaintiffs have failed to comply with the demand requirements of Fed.R.Civ.P. 23.1 without merit.

### C. Failure to Join an Indispensable Party

■ Equally without merit is defendants' contention that this complaint should be dismissed for failure to join DE'76 and its partners as indispensable parties. Defendants additionally have asserted that DE'76 and its partners are indispensable parties to this lawsuit, and that plaintiffs' failure to join them is fatal to this action. Fed.R.Civ.P. 19.[16] We disagree.

Fed.R.Civ.P. 19 provides a two pronged analysis for joinder of parties. Rule 19(a) provides for the joinder of non-parties related in various ways to the action, and who are "subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action ..." DE'76 was dissolved in December 1983 and all of its assets distributed around May 1984. Amended Complaint ¶ 17, Ex. 1. This Court previously held that this action can be maintained on behalf of DE'76, although dissolved, as a "settling of accounts" or "winding up of business." (Order of July 17, 1986 at 2–3, Green, J.)

---

**16.** The initial complaint did not name DE'76 as a party. Named defendants were GF & B and its individual partners, LOEA, DE Ltd., William Levitt and William White. In amending the complaint to assert derivative claims on behalf of DE'76, plaintiffs named DE'76 as a defendant.

"To rule otherwise ..." continued Judge Green, "would produce a highly inequitable result." *Id.*

While arguing that DE'76, now dissolved, is not an indispensable party, plaintiffs assert alternatively that DE'76 has been properly brought into this action by service of process on defendant Meyer Feldman, general partner of DE'76 as of December 23, 1983, just prior to its dissolution.

Defendants argue that DE'76 and its partners, LOEA and DE Ltd., have not been served, claiming that although defendant Feldman was served and entered an appearance, he has been dismissed as a defendant in his capacity as a former general partner of DE'76 (Memorandum Opinion, September 23, 1988) and remains as a defendant only as a partner of defendant law firm.

Defendants fail to address the second prong of the Rule 19 analysis, which is controlled by "pragmatic and equitable considerations." *Lone Star Industries, Inc. v. Redwine,* 757 F.2d 1544, 1552 (5th Cir. 1985). Inability to join a party who meets the criteria in Rule 19(a) is not necessarily fatal. *Wichita & Affiliated Tribes of Oklahoma v. Hodel,* 788 F.2d 765, 774 (D.C.Cir.1986). Rather, Rule 19(b) provides that if such a person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

Rule 19(b) and the advisory committee's note on the rule articulate a number of factors to assist courts in determining whether a party is indeed "indispensable" to the action. *Fortuin v. Milhorat,* 683 F.Supp. 1, 3 (D.D.C.1988). In applying this "somewhat amorphous standard," *Wichita,* 788 F.2d at 774, the rule instructs the court to consider, among other things, the following four factors:

first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). These four factors are not "rigid, technical tests, but rather 'guides to the overarching equity and good conscience determination.'" *Wichita,* 788 F.2d at 774 (quoting *Cloverleaf Standardbred Owners Assoc. v. National Bank of Washington,* 699 F.2d 1274, 1279 n. 11 (D.C.Cir.1983)). Having weighed the relevant factors, it is clear that in "equity and good conscience," this action should proceed with the parties before us.

The first relevant factor concerns the impact of a judgment in this case on the absent party [DE'76 and its limited partners] and the possible exposure of the defendants to future claims by the absentee. Since DE'76 is no longer in existence and plaintiffs have been permitted to bring this suit derivatively only for the purpose of "settling accounts," it is unlikely that defendants will be subject to any serious threat of future claims brought by or on behalf of the corporation. *See Lone Star Industries,* 757 F.2d at 1551–1552 (dissolved corporation held not an indispensable party in Rule 19(b) analysis).

Of less concern are the second and third factors. Since the absent party, DE'76, is now dissolved, any relief granted against the defendant law firm and its members would be adequate and "can be shaped so as to avoid prejudice to the absent party." Fed.R.Civ.P. 19(b).

Most important for the purposes of this case, the final factor that Rule 19(b) mentions is "whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder." Dismissal of this action for failure to join DE'76 would effectively deny plaintiffs relief in any forum. "A court should be extra cautious in dismissing a case for nonjoinder where the plaintiff 'will not have an adequate remedy elsewhere.'" *Wichita,* 788 F.2d at 777 (quot-

**1122**

ing *Park v. Didden,* 695 F.2d 626, 631 n. 13 (D.C.Cir.1982)).

The decision whether or not to dismiss a case under Rule 19(b) resides primarily in the discretion of district court judges. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788–789 (D.C.Cir.1983), *cert. denied* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Samson Tug & Barge Co., Inc. v. United States,* 695 F.Supp. 25, 28–29 (D.D.C.1988). In addition, Rule 19(b) is not intended to exclude considerations, not enumerated, that are applicable in a particular case. *Lone Star Industries,* 757 F.2d at 1551 (citations omitted).

This court previously resolved this issue against defendants in an Order issued on July 17, 1986, and refused to review the issue again in a Memorandum Opinion on September 23, 1988, holding that the "law of the case" rule applied. (Memorandum Opinion, September 23, 1988 at 12).

Therefore, evaluating the factors set forth in Rule 19(b), it is clear that "in equity and good conscience" this action should proceed.

Accordingly, defendants' motion for summary judgment for failure to join an indispensable party is denied.

### III. *Conclusion*

For the reasons stated above, defendants' motion for summary judgment is granted only with respect to any recovery from the Marks–Miron financial arrangement and denied as to the remainder.

An order consistent with the foregoing has been entered this day.