SHAPIRO, LIFSCHITZ & SCHRAM,
P.C., Plaintiff,

v.

R.E. HAZARD, Jr., a California Limited
Partnership, et al., Defendants.

R.E. HAZARD, Jr., a California
Limited Partnership, et al.,
Counter–Plaintiffs,

v.

SHAPIRO, LIFSCHITZ & SCHRAM,
P.C., et al., Counter–Defendants.

Civil Action No. 96–1079 SSH.

United States District Court,
District of Columbia.

Sept. 30, 1998.

defendants Colleen Coffman ("Colleen") and Coffman Specialties, Inc. ("Specialties"); a motion to transfer pursuant to 28 U.S.C. § 1404(a) submitted by defendants James Coffman ("James"), Coffman Construction, Inc. ("Construction"), and R.E. Hazard, Jr., a California limited partnership ("Hazard"); plaintiff's motion to dismiss defendants' counterclaim; and related pleadings.[1] The Court defers its consideration of the motion to dismiss for lack of personal jurisdiction pending the resolution of essential evidentiary questions. The Court denies defendants' motion to transfer without prejudice. Finally, the Court dismisses Counts I, II, III, V, VI, VII, X, XI, and portions of Count IX of defendants' counterclaim.

## BACKGROUND [2]

On May 10, 1996, plaintiff, a Washington, D.C., law firm, filed a two-count complaint attempting to recover attorney's fees allegedly owed by defendants. The first count alleges that defendants breached the parties' retainer agreement by failing to pay fees owed thereunder. The second count is for recovery in *quantum meruit*. The retainer agreement was signed by defendant James in his individual capacity, as president of Construction, and as the authorized representative of Hazard, and provided that plaintiff would represent Hazard in connection with litigation over a construction contract with a school district in California (the "School Litigation"). Defendants filed an eleven-count counterclaim asserting claims for professional malpractice, breach of fiduciary duty, breach of contract, rescission, and "money had and received."

Scott L. Nelson, Hugh P. Quinn, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Plaintiffs.

Barbara E. Nicastro, Bethel & Nicastro, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are a motion to dismiss for lack of personal jurisdiction submitted by

## ANALYSIS

**I. Motion To Dismiss for Lack of Personal Jurisdiction**

Defendants assert that the Court does not have personal jurisdiction over Col-

1. The Court held a hearing on these motions on December 4, 1997.

2. The Court does not set forth a comprehensive factual history at this point because of the varying standards of factual evaluation required by the pending motions. Necessary facts will be determined according to the appropriate standard and set forth within the sections analyzing the individual motions.

leen or Specialties because neither has enough of a connection with this jurisdiction. District of Columbia law controls the extent to which the Court may exercise personal jurisdiction over a nonresident defendant. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987). D.C.Code § 13–423(a)(1) provides that the Court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." This provision provides for jurisdiction to the fullest extent permissible under the due process clause of the United States Constitution. *See Schwartz v. CDI Japan, Ltd.*, 938 F.Supp. 1, 4 (D.D.C.1996); *Fisher v. Bander*, 519 A.2d 162, 163 (D.C.1986). Accordingly, the relevant inquiry is whether Colleen and Specialties had "minimum contacts" with the District so that the exercise of personal jurisdiction would not offend the "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ This "minimum contacts" requirement must be met with respect to each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C.Cir.1988); *Schwartz*, 938 F.Supp. at 4. Ordinarily, a defendant corporation's contacts with a forum may not be attributed to shareholders, affiliated corporations, or other parties. *See Rush*, 444 U.S. at 332, 100 S.Ct. 571; *Wiggins v. Equifax, Inc.*, 853 F.Supp. 500, 503 (D.D.C.1994). An exception exists, however, where affiliated parties are "alter egos" of a corporation over which the Court has personal jurisdiction; in that case the corporation's

contacts may be attributed to the affiliated party for jurisdictional purposes. *See Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (Fed.Cir.1985) ("[I]f the corporation is [the defendant's] alter ego, its contacts are his and due process is satisfied.") (internal quotation omitted); *Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.*, 1987 WL 11085, *4 (D.D.C. May 8, 1987); *Chase v. Pan–Pacific Broadcasting, Inc.*, 617 F.Supp. 1414, 1425 (D.D.C.1985); *see also El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996). Accordingly, plaintiff may demonstrate the Court's jurisdiction over Colleen and Specialties if it proves that they are "alter egos" of Construction or Hazard (which do not contest jurisdiction).[3] If Colleen and Specialties are not found to be alter egos, plaintiff must present evidence of their individual contacts with the District of Columbia to establish the requisite "minimum contacts."

■ Although ordinarily a plaintiff need only establish a *prima facie* case that personal jurisdiction exists in order to survive a motion to dismiss, *see Crane v. New York Zoological Soc'y*, 894 F.2d 454, 458 (D.C.Cir. 1990), in situations where the parties are permitted to conduct discovery on the jurisdictional issue a plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990). On September 10, 1997, the Court granted plaintiff's request to engage in jurisdictional discovery. *See El–Fadl*, 75 F.3d at 676; *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1351 (1990). During the December 4, 1997, hearing on pending motions, plaintiff indicated that the discovery revealed additional facts supporting

---

**3.** Considerations of justice and equity justify piercing the corporate veil and finding the corporation's officers or shareholders to be alter egos of the corporate entity when there is a unity of ownership and interest. *Vuitch v. Furr*, 482 A.2d 811, 815–16 (D.C.1984). "Unity of interest and ownership can ... be demonstrated by showing domination and control of a corporation, as in a parent-subsidiary relationship or in a closely held corporation." *Id.* Individuals or other entities may be held liable for the activities of a corporation when it is demonstrated that "the

corporation is not only controlled by those persons [who are alleged alter egos of the corporation], but also that the separateness of the persons and the corporation has ceased and ... an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 249 (D.C.1993) (internal quotation omitted); *see also Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 93 (D.C.1994); *Vuitch*, 482 A.2d at 815.

its alter ego theory. Accordingly, the Court concludes that an evidentiary hearing on the personal jurisdiction issue is warranted. *See Celotex Corp. v. Rapid American Corp.*, 124 F.3d 619, 628 (4th Cir.1997) ("When ... a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a [Rule 12(b)(2) ] motion ... 'the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.' ") (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)); *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984). The Court defers its consideration of Colleen's and Specialties' motion to dismiss for lack of personal jurisdiction until the completion of an evidentiary hearing.

## II. *Motion To Transfer*

 Defendants James, Construction, and Hazard contend that this action should be transferred to the Southern District of California pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In order to succeed on their motion, defendants have the heavy burden of establishing that plaintiff's choice of forum is inappropriate. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981);[4] *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987); *International Bhd. of Painters and Allied Trades Union v. Best ·Painting and Sandblasting Co.*, 621 F.Supp. 906, 907 (D.D.C.1985).

 Although the Court has broad discretion to adjudicate motions for transfer under § 1404(a), *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789

(1955), the Court may not transfer a case "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Pain*, 637 F.2d at 783. In determining the propriety of transfer pursuant to § 1404(a), the Court considers both the private interests of the parties and the public interests of the courts:

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Trout Unlimited v. Department of Agric.*, 944 F.Supp. 13, 16 (D.D.C.1996) (footnotes omitted).

 Plaintiff's choice of forum is due substantial deference. *Int'l Bhd. of Painters*, 621 F.Supp. at 907; *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C.Cir.1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed and, so far as the private interests of the litigants are concerned, it will not be unless the balance of convenience is strongly in favor of the defendant."). This is particularly true where, as here, plaintiff is a resident of the chosen forum and the activities forming the basis of the suit have a significant connection with the forum. *See Nichols v. United States Bureau of Prisons*, 895 F.Supp. 6, 8 (D.D.C. 1995); *Eastern Air Lines*, 672 F.Supp. at 526. Plaintiff is a D.C.-based law firm. Its action for breach of contract and for recovery in *quantum meruit* has a strong connection

---

**4.** Although *Pain* discussed the factors relevant to a motion to dismiss on *forum non conveniens* grounds, the Court of Appeals has indicated that the same factors are applicable to a § 1404(a)

motion. *See SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1153 (D.C.Cir.1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979).

to this forum because James contacted plaintiff at its D.C. offices to retain it as legal counsel; James negotiated and agreed to the terms of the retainer agreement on behalf of himself and Construction and Hazard, and plaintiff signed the agreement, in the District of Columbia; a large proportion of the work done pursuant to the retainer agreement was performed in the District of Columbia; and James traveled to the District on several occasions to discuss the progress of the case.

The remaining private factors do not outweigh the deference due plaintiff's choice of forum. Defendants' choice of forum (California) is also connected to the events underlying plaintiff's action and defendants' counterclaims: defendants reside in California, the object of the contract was plaintiff's legal representation of defendants in California, and the payment (or lack thereof) of plaintiff's bills occurred in California. However, although substantial, the connections to California are no more significant than those to the District of Columbia. Likewise, the "convenience of the parties" factor does not favor either side—both would face significant inconvenience if the case were tried in the competing forum.

Defendants' strongest argument for transfer is that the District of Columbia is an inconvenient forum for third-party witnesses who, defendants claim, are essential to their defense and counterclaim. They assert that their professional malpractice counterclaim and defense are governed by California law, which requires them to conduct a "case within a case" to demonstrate that they would have prevailed against and recovered payment from the school district had they had competent counsel. *See United Community Church v. Garcin,* 231 Cal.App.3d 327, 282 Cal.Rptr. 368, 373 (Ct.App.1991); *Campbell v. Magana,* 184 Cal.App.2d 751, 8 Cal.Rptr.

32, 34–36 (Ct.App.1960). Defendants claim that they will need third-party witnesses to establish the following parts of their "case within a case": (1) that Hazard should have been compensated by the school district for costs associated with the removal and installation of certain roof tiles; (2) that plaintiff was negligent in failing to include language in the settlement providing that a subcontractor's arbitration award against Hazard would be paid by the school district; and (3) that plaintiff violated its obligations to defendants by forcing settlement, resulting in the forfeiture of an alleged contractual right to receive attorney's fees as the prevailing party at trial. Defendants further contend that these third-party witnesses are not subject to compulsory process in the District of Columbia, but they are in California.

The Court concludes that defendants' asserted need for third-party witnesses residing in California does not overcome the other factors favoring plaintiff's chosen forum. As an initial matter, although defendants' counterclaim contains several counts based on professional negligence, only the second potentially will require defendants to demonstrate that they would have prevailed on the merits of the School Litigation.[5] Defendants state that the potential witnesses residing in California are beyond the subpoena power of this Court, but they do not suggest that these witnesses will refuse to appear if the trial is held in the District of Columbia. *See Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 148–49 (D.Del.1985) (noting that when defendants do not indicate that their third-party witnesses will be unwilling to attend trial voluntarily, the court may "disregard[ ] the availability of compulsory process as a factor"); *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 931 (W.D.Mo.1985) (same); *Independent Petrochemical Corp. v. Aetna Ca-*

5. Although defendants' statements at oral argument suggested that they were planning on including a malpractice claim based on the allegedly low value of the settlement award caused by plaintiff's alleged failure to account for an arbitration award and include subcontractor fees in the settlement, the counterclaim that defendants actually filed does not include such a cause of action. The second count of defendants' counterclaim alleges that plaintiff, through its allegedly unconscionable fees, forced defendants to set-

tle the School Litigation, resulting in defendants' losing "their contractual right to attorney fees and costs at trial as prevailing party." Counterclaim ¶ 24. Whether or not defendants will be required to prove that they would have prevailed on the merits of the underlying litigation depends on the meaning of "prevailing party" in the underlying contract. For the purposes of this motion only, the Court assumes that the contract defined "prevailing party" as the party who prevailed at trial.

*sualty & Surety Co.*, 1984 WL 3656 at *2 (D.D.C.1984). Nor do defendants' complaints about the expense of transporting those witnesses to this forum carry much weight; were the case transferred, plaintiff would face similar transportation expenses for its witnesses. Finally, defendants have not shown that the third-parties' testimony could not be obtained by other means, such as written or videotaped depositions. *See, e.g., Minstar*, 626 F.Supp. at 149.

The public interest factors also favor denying defendants' motion to transfer. The Court concludes that District of Columbia law applies to most of the claims asserted by both plaintiff and defendants.[6] Because defendants have provided the Court with no information regarding the level of congestion of the transferee court, the Court cannot conclude that this factor weighs in their favor. Finally, both jurisdictions have an interest in regulating the conduct of attorneys practicing law within their jurisdictions. If anything, the District of Columbia's interest is stronger because defendants initiated the events resulting in the pending claims by reaching within this jurisdiction for the specific purpose of retaining counsel. *Cf. Fisher*, 519 A.2d at 164. Accordingly, the Court finds that defendants have failed to meet the heavy burden of demonstrating that transfer is warranted and thus denies defendants' motion to transfer without prejudice.[7]

### III. *Plaintiff's Motion To Dismiss Counterclaim*

On October 7, 1996, James, Construction, and Hazard filed an eleven-count counterclaim against plaintiff and unknown or unnamed individuals who hold an interest in plaintiff.[8] Counts I through IV assert that plaintiff committed professional malpractice by (1) charging excessive fees and performing unnecessary tasks, (2) forcing the premature settlement of the School Litigation by charging excessive fees; (3) attempting to acquire and enforce an attorney's lien, and (4) "self dealing" by withholding legal representation after a payment dispute. Counts V–VIII are claims for breach of fiduciary duty based on the aforementioned conduct. Count IX asserts that plaintiff breached the retainer agreement by failing to exercise the reasonable care expected of an attorney. Finally, in Counts X and XI defendants contend that the retainer agreement should be rescinded and that defendants are entitled to money "had and received" as a result of that rescission.

Plaintiff filed a Rule 12(b)(6) motion to dismiss each count of the counterclaim. In evaluating plaintiff's motion to dismiss, the Court considers only the facts alleged in defendants' counterclaim, any documents either attached to or incorporated in the counterclaim, and matters of which the Court may take judicial notice. *See EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C.Cir.1997). Defendants' factual allegations must be presumed true and liberally construed in their favor. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A *Moore's Federal Practice*, § 12.07, at 63 (2d ed.1986) (footnote omitted); *see also Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987). Dismissal is appropriate only if it appears beyond doubt that no set of facts proffered in support of defendants' counterclaim would enti-

---

6. Defendants have failed to demonstrate that a true conflict exists between the laws of the competing jurisdictions, a threshold issue in choice of law analysis. *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C.Cir.1992); *Greaves v. State Farm Ins. Co.*, 984 F.Supp. 12, 14 (D.D.C.1997); *see also Pain*, 637 F.2d at 784 (noting that defendants bear the burden of demonstrating that transfer is justified). Where no true conflict exists, the Court applies the law of the forum jurisdiction, the District of Columbia. *See GEICO*, 958 F.2d at 1141. The choice of law issue,

as it relates to the counterclaims, is discussed more extensively below.

7. Although the record at this point does not support transfer, if it subsequently becomes apparent that testimony by unwilling third-parties is necessary to establish defendants' defenses or counterclaims, they may make a renewed motion to transfer.

8. For convenience, the Court will continue to refer to the parties as plaintiff and defendants.

tle them to relief. *St. Francis Xavier*, 117 F.3d at 624; *Haynesworth*, 820 F.2d at 1254. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12," Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court nonetheless sets forth its reasoning.

### A. Choice of Law

■■■ Because of an apparent disagreement between the parties, the Court first addresses the question of which jurisdiction's law governs defendants' counterclaim for the purpose of the motion to dismiss. This is a diversity case, so the Court applies the District of Columbia's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *cert. denied*, 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942); *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C.Cir.1992). The District of Columbia applies a modified "interest analysis" to resolve choice of law questions. *GEICO*, 958 F.2d at 1141. Under this approach, the Court first determines whether a "true conflict" exists between the laws of the competing jurisdictions. *Id.* If there is a true conflict, the Court determines which of the relevant jurisdictions has the "more substantial interest" in having its law applied. *Id.* Where no true conflict exists, the Court applies the law of the District of Columbia by default. *See id.* (citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970)). This analysis is applied to individual claims rather than to the action as a whole. *See Nelson v. Nationwide Mort. Corp.*, 659 F.Supp. 611, 615 (D.D.C.1987).

With one exception, as noted below, the Court concludes that no true conflict exists between the relevant laws of the competing jurisdictions. The relevant D.C. and California laws are the same or, where slightly different, would result in the same outcome when applied to the facts of this case. *See Greaves v. State Farm Ins. Co.*, 984 F.Supp. 12, 14 (D.D.C.1997). Accordingly, the Court applies the laws of the District of Columbia

to the counterclaims, with reference to California's corresponding laws where helpful.[9] *See GEICO*, 958 F.2d at 1141.

### B. Availability of Attorney's Fees as Damages

■■■ The Court next addresses a damages issue which relates to the entire counterclaim. In each count, defendants seek as damages the attorney's fees and costs which they have incurred in the prosecution of the instant action. Plaintiff asserts that the award of attorney's fees as damages is prohibited by the "American rule." Defendants do not address this issue.

The American rule provides that the "prevailing party litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This rule is followed by both the District of Columbia and California. *Dalo v. Kivitz*, 596 A.2d 35, 37 (D.C.1991); *Schneider v. Friedman, Collard, Poswall & Virga*, 232 Cal.App.3d 1276, 283 Cal.Rptr. 882, 884 (Ct.App.1991). Neither jurisdiction recognizes an exception permitting a client to recover the attorney's fees incurred in defending against an action for fees or prosecuting a professional malpractice or breach of fiduciary duty claim against his former attorney. *Dalo*, 596 A.2d at 37–38 (rejecting client's contention that "he should be compensated for successfully defending against [his prior attorneys'] contract claims ... and also for prosecuting his own successful malpractice claims against the attorneys"); *Schneider*, 283 Cal.Rptr. at 884–86 (same). Accordingly, the Court dismisses that portion of each count of defendants' counterclaim alleging an entitlement to the attorney's fees and legal expenses incurred by defendants as a result of this action.

### C. Professional Negligence and Breach of Fiduciary Duty Claims (Counts I–VIII)

Defendants' four professional negligence counts are based on exactly the same conduct

---

9. The Court emphasizes that it separately analyzed the choice of law question for each issue but summarizes its conclusions in this section for the sake of clarity and concision. *See Nelson*, 659 F.Supp. at 615.

as their four breach of fiduciary duty claims. In light of this fact and the similarity of the law governing both causes of action, the Court addresses all these counts together.

 In order to state a claim for professional malpractice, defendants must allege facts which establish: (1) that plaintiff had a duty to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from plaintiff's negligence. *See Wolcott v. Ginsburg,* 746 F.Supp. 1113, 1116 (D.D.C.1990); *Mills v. Cooter,* 647 A.2d 1118, 1123 (D.C.1994); *see also Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433, 435 (Cal.1971). With respect to the duty element, both D.C. and California recognize that their respective disciplinary codes are strong evidence of the appropriate standard of care. *See Williams v. Mordkofsky,* 901 F.2d 158, 163 (D.C.Cir.1990) ("While the Model Code [of Professional Responsibility] does not provide for a direct private malpractice action, violations of the Code certainly constitute evidence in an action at common law.") (citing *Waldman v. Levine,* 544 A.2d 683, 690–91 (D.C.1988)); *Wolcott,* 746 F.Supp. at 1119 n. 14 (same); *see also Shaffer v. Superior Court,* 33 Cal.App.4th 993, 39 Cal.Rptr.2d 506, 511 (Ct.App.1995) (referring to the California rules of professional conduct for assistance in determining when an attorney's attempt to charge or collect an allegedly unconscionable fee constitutes professional malpractice); *Day v. Rosenthal,* 170 Cal. App.3d 1125, 217 Cal.Rptr. 89, 102 (Ct.App. 1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).

 The requirements for stating a breach of fiduciary duty claim are similar. Defendants must allege that plaintiff had a fiduciary duty to them and violated that duty.[10] *See Griva v. Davison,* 637 A.2d 830, 846–47 (D.C.1994); *Mirabito v. Liccardo,* 4 Cal.App.4th 41, 5 Cal.Rptr.2d 571, 573 (Cal.

Ct.App.1992). Defendants also must allege facts from which proximate cause and injury may be inferred if they seek compensatory damages (defendants are not required to demonstrate these latter elements in order to state a claim for disgorgement of legal fees, according to some breach of fiduciary duty cases). *See Hendry v. Pelland,* 73 F.3d 397, 401 (D.C.Cir.1996) (discussing the circumstances under which a plaintiff must demonstrate damages in a breach of fiduciary duty claim); *see also Stanley v. Richmond,* 35 Cal.App.4th 1070, 41 Cal.Rptr.2d 768, 776 (Ct.App.1995) (setting forth the elements of a breach of fiduciary action). Courts also look to the disciplinary rules to establish the standards for a breach of a fiduciary duty. *See Hendry,* 73 F.3d at 401–402; *BCCI Holdings (Luxembourg) S.A. v. Clifford,* 964 F.Supp. 468, 481 (D.D.C.1997); *Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 679 (D.D.C.1989), *aff'd* 70 F.3d 637 (D.C.Cir.1995); *Griva,* 637 A.2d at 846–47; *see also Mirabito,* 5 Cal.Rptr.2d at 573.

### a. Counts I and V

Defendants first allege that plaintiff committed professional malpractice and breached its fiduciary duty by charging unreasonable or unconscionable fees. *See* Counterclaim ¶¶ 17–18; 44–45. Specifically, defendants claim that plaintiff breached its duty when it "charged a fee in excess of the value of the legal services performed, charged a fee in excess of the value of the results obtained, charged hourly fees in excess of their value in the marketplace, charged for unnecessary and unauthorized services and expenditures, and charged an unreasonable and excessive number of hours for the reasonable value of the legal services received." *Id* ¶ 18; *see also id.* ¶ 45.

The "duty" which forms the basis for the claims in Counts I and V is a lawyer's duty to charge a "reasonable" fee. *See* D.C. Rules of Professional Conduct Rule 1.5(a) [hereinafter "D.C. Rules"]; *see also* California Rules of Professional Conduct Rule 4–200 [hereinafter

---

**10.** Attorneys unquestionably stand in a fiduciary relationship to their clients for matters related to their legal representation of their clients. *See Griva v. Davison,* 637 A.2d 830, 846–47 (D.C.

1994); *Trafton v. Youngblood,* 69 Cal.2d 17, 69 Cal.Rptr. 568, 442 P.2d 648, 655 (Cal.1968) (*en banc* ).

"California Rules"] ("A member shall not enter into an agreement for, charge, or collect an illegal or unconscionable fee."); *Schultz v. Harney*, 27 Cal.App.4th 1611, 33 Cal.Rptr.2d 276, 281 (Ct.App.1994) (indicating that charging excessive and unlawful fees can constitute professional negligence). Whether a fee is reasonable depends on the following factors:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent.

D.C. Rule 1.5(a).[11] The official commentary to D.C. Rule 1.5(a) further provides that although "[i]n a new client-lawyer relationship ... an understanding as to the fee should be promptly established," lawyers need not recite all the factors that affect the fee. *Id.* cmt. 1. Lawyers need only explain the factors that are "directly involved in the [fee's] computation ... for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount or to identify the factors that may be taken into account in finally fixing the fee." *Id.* A retainer agreement must "explain applicable hourly billing rates, if billing on an hourly basis is contemplated, and indicate what charges ... are imposed in addition to an hourly rate." *Id.* cmt. 2. An hourly billing arrangement is permissible, however "a lawyer should not exploit a fee arrangement based primarily upon hourly charges by using wasteful procedures." *Id.* cmt. 5.

Defendants' counterclaim and the retainer agreement (attached thereto and incorporated by reference) establish that, on October 24, 1994, James, Construction, and Hazard retained plaintiff to represent Hazard in litigation in California. Counterclaim ¶ 9 & Ex. A. According to the retainer agreement, defendants were charged a rate ranging from $215 per hour for associates and "Vice Presidents" to $285 per hour for "Principals." *Id.* Ex. A. The parties agreed that defendants were only responsible for paying $5,000 per month for fees; in the event the fees for a given month exceeded that figure, the excess would be deferred. *Id.* Finally, defendants agreed to pay plaintiff an additional 10 percent of all fees charged pursuant to the retainer agreement, due at the conclusion of plaintiff's representation of Hazard. Defen-

---

**11.** Although there are small variations between the California and District of Columbia professional rules governing fees, the Court concludes that application of the law of either jurisdiction would result in the same outcome, and thus applies the D.C. version. *See Greaves*, 984 F.Supp. at 14. California Rule 4–200(B) provides:

Unconscionability of a fee shall be determined on the basis of all the facts and circumstances existing at the time the agreement is entered into except where the parties contemplate that the fee will be affected by later events. Among the factors to be considered, where appropriate, in determining the unconscionability of a fee are the following:

(1) The amount of the fee in proportion to the value of the services performed;

(2) The relative sophistication of the member and the client;

(3) The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly;

(4) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the member;

(5) The amount involved and the results obtained;

(6) The time limitations imposed by the client or by the circumstances;

(7) The nature and length of the professional relationship with the client;

(8) The experience, reputation, and ability of the member or members performing the services;

(9) Whether the fee is fixed or contingent;

(10) The time and labor of the client;

(11) The informed consent of the client to the fee.

dants allege that between October 24, 1994, and September 12, 1995, plaintiff charged them approximately $570,000 for legal services. *Id.* ¶ 15.

The allegations in Counts I and V fall into two categories. First, defendants claim that the hourly fees charged by plaintiff for its work were unreasonably high as compared to the market value for similar legal work. Defendants also assert that plaintiff breached its fiduciary duty and committed professional negligence by "charg[ing] for unnecessary services and expenditures . . . and charg[ing] an unreasonable and excessive number of hours for the reasonable value of the legal services received." Counterclaim ¶¶ 14 & 45. The Court addresses each claim in turn.

 Even assuming all facts in favor of defendants, the Court concludes that defendants' claim that the fees charged by plaintiff were, on their face, unreasonable and unconscionable (and thus violated plaintiff's professional duty) cannot survive a motion to dismiss. The Court acknowledges that the reasonableness of a fee is factual in nature and, therefore, as a general rule it is not appropriate to decide reasonableness on a motion to dismiss. In this case, however, defendants have not, and the Court concludes that they cannot, plead facts to support their contention that fees of $215 to $285 per hour, even with the additional 10 percent charge, are so unreasonable as to violate D.C. Rule 1.5 or any other measure of an attorney's duty to charge a reasonable fee. Defendants are sophisticated commercial parties who could have retained any firm in California or D.C., but instead agreed to pay plaintiff $215 to $285 per hour (based on the experience of the attorney) to represent them. *See* D.C. Rule 1.5(a)(5), (7) & (8); California Rule 4-200(B)(2), (6), (8), & (9). The retainer agreement clearly set forth in written form the fees which defendant would be charged for legal services. *See* D.C. Rule 1.5 cmt. 2; California Rule 4-200(B)(11). Defendants do not allege that they signed the retainer agreement under duress or based on misrepresentation by plaintiff, or that plaintiff charged fees higher than those contained in the retainer agreement. Accordingly, the Court dismisses with prejudice that portion of Counts I and V alleging that plaintiff committed malpractice and breached its fiduciary duty by charging an unreasonably high hourly rate for its services.[12]

 The Court also concludes that the remaining portion of Counts I and V, alleging that plaintiff charged defendants for unnecessary services and overbilled, should be dismissed for failure to state a claim. These claims are, however, dismissed without prejudice so that defendants may remedy the deficiency in their pleading if the facts allow. There can be little doubt that if plaintiff overbilled defendants or charged them for unnecessary services, this would constitute professional malpractice and a breach of plaintiff's fiduciary duty to defendants. *See* D.C. Rule 1.5 cmt. 5 ("A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures."). However defendants cannot support such a claim by simply alleging, without factual support, that plaintiff "charged for unnecessary services and expenditures, and charged an unreasonable and excessive number of hours for the reasonable value of the legal services received." Counterclaim ¶¶ 14 & 22. Although the Court must treat defendants' factual assertions as true and draw all reasonable inferences therefrom in defendants' favor, "the court need not accept inferences drawn by [defendants] if such inferences are unsupported by the facts set out in the complaint. Nor must the Court accept

---

**12.** This is true even assuming, as the Court must, that plaintiff's legal fees exhausted the settlement amount it obtained on defendants' behalf. D.C. Rule 1.5(a)(4) and California Rule 4-200(B)(5) do not, as defendants suggest, indicate that an hourly fee may be "unreasonable" simply because otherwise legitimate fees end up exhausting or nearly exhausting the recovery. Those factors are designed to ensure that, for example, a contingent fee is not grossly disproportionate to the value of the work performed as calculated on an hourly basis. As plaintiff correctly notes, defendants' interpretation of this factor would convert hourly fees into contingent fees, but only when a client loses or has a low recovery, and perhaps require the court to deem an attorney's fees to be unreasonable whenever a client loses an action. Clearly, such a result is not supportable. *See Cetenko v. United California Bank,* 30 Cal.3d 528, 179 Cal.Rptr. 902, 638 P.2d 1299, 1301 (Cal. 1982).

legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994); *see also Haynesworth*, 820 F.2d at 1254 ("[B]are conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of [a motion to dismiss].") (internal quotation omitted). The only factual allegation in defendants' counterclaim is that plaintiff charged defendants $570,000 for their legal services. This is not a factual allegation which "if proven, would show that the challenged conduct" breached plaintiff's duty of care.[13] *See Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1085–86 (D.C.Cir.1998); *see also Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (indicating that in order to survive a motion to dismiss, a pleading must give the opposing party "fair notice of the factual basis of each claim"). Accordingly, these portions of Counts I and V are dismissed without prejudice.

### b. Counts II and VI

In Counts II and VI, defendants also claim that plaintiff committed professional negligence and breached its fiduciary duty by "charging an excessive and unconscionable fee." Counterclaim ¶¶ 25 & 50. As such, the conduct alleged to have breached plaintiff's duty of care is the same as that in Counts I and V—"self dealing" by charging unreasonable fees. *See Schultz*, 33 Cal.Rptr.2d at 281; *see also* Defs.' Opp'n to Pl.'s Mot. To Dis. Defs.' Counterclaim, at 8. The difference between these counts and Counts I and V is the alleged proximate cause and resultant

injury. Counts II and VI allege that, due to the excessive and unreasonable fees charged by plaintiff, the legal fees escalated to such a level that plaintiff took "actions to force settlement ... in order to provide [plaintiff] with sufficient proceeds to satisfy [plaintiff's] alleged fees." *See* Counterclaim ¶ 23. Furthermore, defendants allege that "[t]his settlement resulted in [defendants'] denial of their contractual right to attorney fees and costs at trial as prevailing party," and therefore that the "injury" resulting from plaintiff's alleged self-dealing is the fees incurred during the School Litigation. *See id.* ¶¶ 23–26 & 51.[14]

■ Because the alleged breach of duty in Counts II and VI is the same as that in Counts I and V, Counts II and VI suffer from precisely the same deficiencies. Accordingly, those portions of Counts II and VI alleging that plaintiff forced settlement by charging a facially unreasonably hourly fee are dismissed with prejudice. Those portions of Counts II and VI alleging that plaintiff breached its duty by overbilling or charging for unnecessary services are dismissed without prejudice, and defendants are granted until October 23, 1998, to amend their counterclaim to remedy the factual deficiencies discussed in the previous subsections.[15]

### c. Counts III and VII

Defendants assert that plaintiff committed professional malpractice and breached its fiduciary duty by improperly attempting to acquire and enforce an attorney's lien. Defendants appear to be making three separate claims in Count III, one of which overlaps in Count VII. First, defendants claim that

---

13. The counterclaim does not set forth even a single example of allegedly excessive hours or allegedly unnecessary services.

14. Defendants, in their opposition to plaintiff's motion to dismiss their counterclaim, clarify that they do not challenge the value of the settlement itself. *See* Defs.' Opp'n to Pl.'s Mot. To Dis. Defs.' Counterclaim, at 8.

15. The language in defendants' counterclaim could be read as claiming that the act of settling was a breach of duty independent of the alleged charging of unreasonable fees. *See* Counterclaim ¶ 23. If defendants intend to make this claim, however, they must amend their counter-

claim to allege facts which, if true, would prove that the act of settling breached plaintiff's fiduciary and professional duties. *See Caribbean Broadcasting*, 148 F.3d at 1085–86. Defendants' ambiguous reference to "actions" taken by plaintiff to force settlement is not sufficient. Nor can the Court assume a violation of plaintiff's duty based solely on defendants' allegation that the value of the settlement was close to the amount of attorney's fees due, *see Cetenko v. United California Bank*, 30 Cal.3d 528, 179 Cal.Rptr. 902, 638 P.2d 1299, 1301 (Cal.1982), especially since defendants admit that the value of the settlement was satisfactory. *See* Defs.' Opp'n to Pl.'s Mot. To Dis. Defs.' Counterclaim, at 8.

plaintiff committed professional negligence and breached its fiduciary duty by including ambiguous language in the retainer agreement which created an attorney's lien, without disclosing to defendants that such a lien was created by that language or advising defendants to seek the advice of independent counsel. Counterclaim ¶¶ 29 & 55. Defendants further allege that plaintiff attempted to obtain attorney's liens from Hazard and Colleen without advising them to seek the advice of independent counsel, and that this created a cause of action for professional negligence, even though Hazard and Colleen refused to execute the proposed contracts. *Id.* ¶ 30. Finally, defendants claim that plaintiff breached its professional duty by attempting to enforce the attorney's lien in the retainer agreement. *Id.* ¶ 31.

██ Defendants claim that their allegations in paragraphs 29, 31, and 55 of their counterclaim state a claim for professional negligence or breach of fiduciary duty because the conduct alleged is in contravention of the ethical rules governing a lawyer's business transactions with his clients. D.C. Rule 1.8(a) provides that:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary · interest adverse to a client unless: (1) the transaction and terms ... are fair and reasonable ... and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto.[16]

The Court, however, concludes that Rule 1.8(a) does not apply to the creation of an attorney's lien. *See* Rule 1.8 cmt. 8 ("Whether a lawyer has a lien on money or property belonging to a client is generally a matter of substantive law as to which the ethics rules take no position."); *see also* Rule 1.8(i) (setting forth the ethics rules governing attorney's liens). Moreover, contrary to de-

fendants' allegations, the language in the retainer agreement (which James, personally and as a representative of Construction and Hazard, signed) creating the attorney's lien is not vague or ambiguous. *See* Counterclaim Ex. A; *Elam v. Monarch Life Ins. Co.,* 598 A.2d 1167, 1169 (D.C.1991) (indicating that in order to create an attorney's lien, there must "exist between the client and his attorney an agreement from which the conclusion may reasonably be reached that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered"); *see also Cetenko v. United California Bank,* 30 Cal.3d 528, 179 Cal.Rptr. 902, 638 P.2d 1299, 1301 (Cal.1982); *Bluxome Street Assocs. v. Fireman's Fund Ins. Co.,* 206 Cal.App.3d 1149, 254 Cal.Rptr. 198, 200 (Ct.App.1988) (cited with approval in *Wolf v. Sherman,* 682 A.2d 194, 198 (D.C. 1996)). Defendants have not identified, nor can the Court conceive of, any duty of care which could be violated by the clear language in the retainer agreement creating an attorney's lien. Accordingly, the Court dismisses with prejudice the first and second parts of Counts III and all of Count VII.

██ The third part of Count III claims that plaintiff committed professional negligence by enforcing its attorney's lien because it "notif[ied] the entities disbursing the settlement proceeds to [Hazard] to disburse the settlement proceeds jointly to [plaintiff] and [Hazard] ... and to remit the same ... directly to [plaintiff], and ... [sought] to enforce an alleged attorney lien by way of court action." Counterclaim ¶ 31. Defendants reason that the acts of enforcement were a breach of duty because the lien was allegedly invalid (not "knowingly agree[d] to" by defendants). *Id.* As previously discussed, however, the Court holds as a matter of law that the language in the retainer agreement created a valid attorney's lien in the settlement proceeds. An attorney may enforce a valid attorney's lien. *See Wolf,* 682 A.2d at 201 (" 'The trend of the modern decisions ... is to protect the right of the attorney to receive compensation.'

---

**16.** California Rule 3–300, cited by defendant as controlling, is substantially similar to its District of Columbia counterpart.

Debts payable by clients to attorneys should in general be subject to the same rules that normally apply to other debtor-creditor relationships.") (quoting *Elam*, 598 A.2d at 1170); *District of Columbia Redevelopment Land Agcy. v. Dowdey*, 618 A.2d 153, 159 (D.C. 1992); *see also Saltarelli & Steponovich v. Douglas*, 40 Cal.App.4th 1, 46 Cal.Rptr.2d 683, 686 (Ct.App.1995). Accordingly, absent additional facts casting doubt on the propriety of plaintiff's enforcement of its valid attorney's lien, defendants have not stated a claim of professional malpractice, and the Court dismisses the third part of Count III without prejudice.[17]

### d. Counts IV and VIII

▮▮▮▮ Defendants assert that plaintiff committed professional malpractice and breached its fiduciary duty by "refusing to represent [d]efendants, without withdrawing from the case unless [d]efendants immediately remitted" a payment to plaintiff. Counterclaim ¶ 37. Specifically, they allege that, during the course of the School Litigation,

17. This third claim is also deficient because, even assuming defendants had alleged facts which raised an inference of a breach of duty, defendants did not allege actual loss or damage resulting from plaintiff's negligence. *See Wolcott*, 746 F.Supp. at 1116; *Mills*, 647 A.2d at 1123. Defendants' counterclaim lists the cost of defending plaintiff's action to enforce the attorney's lien and the cost of this litigation as damages, but as previously discussed this type of damages award is prohibited by the American rule. *See Dalo*, 596 A.2d at 37; *Schneider*, 283 Cal.Rptr. at 884–86. Defendants' opposition to plaintiff's motion to dismiss their counterclaim makes a passing reference indicating that defendants paid fees to plaintiff after the alleged malpractice, which could, if true, have given rise to cognizable damages, *see* Defs.' Opp'n to Pl.'s Mot. To Dis. Counterclaim, at 10–11, but factual allegations in briefs are not properly considered on a Rule 12(b)(6) motion to dismiss. *See Henthorn v. Department of Navy*, 29 F.3d 682, 688 (D.C.Cir. 1994).

18. This section cites California law because D.C. Rule 1.16 requires an attorney to continue representation notwithstanding good cause for withdrawal if so required by the court before which the litigation is proceeding. Plaintiff was representing defendants in the School Litigation before a California court at the time it allegedly refused or threatened to refuse to provide legal representation, and California law accordingly is relevant to the question of what constitutes good cause to withdraw or request leave to withdraw.

plaintiff threatened to refuse to represent defendants at a scheduled mediation conference unless defendants paid plaintiff $10,000.[18] *Id.* ¶¶ 37 & 61.

Plaintiff first contends that it did not refuse to represent defendants, but merely informed them that it would seek leave to withdraw from representing Hazard in the School Litigation unless a payment for allegedly overdue fees was made. The Court agrees with plaintiff that notifying a client that an attorney plans to withdraw from ongoing litigation over a fee dispute would not violate any duty of care, and in fact appears to be required in California.[19] *See* Cal. Civ. Pro.Code § 284 (stating that an attorney in ongoing litigation may be changed at any time "[u]pon the order of the court, upon the application of either client or attorney, after notice from one to the other"); *People v. Prince*, 268 Cal.App.2d 398, 74 Cal.Rptr. 197, 203 (Cal.Ct.App.1968) ("It is generally recognized that the failure or refusal of a client to pay or secure the proper fees or expenses of the attorney after being

19. Defendants cite *People v. Castillo*, 233 Cal. App.3d 36, 284 Cal.Rptr. 382, 392 (Ct.App.1991), for the proposition that an attorney "must continue representation until released by the client, and cannot terminate representation because of self-interest, or refuse to proceed because of self-interest." Defs.' Opp'n to Pl.'s Mot. To Dis. Defs.' Counterclaim, at 11. This, however, is a mischaracterization of *Castillo*'s holding. That case does no more than suggest that an attorney representing a client in ongoing litigation must seek leave of court to withdraw for nonpayment of fees, rather than unilaterally withdrawing against the wishes of the client. Specifically, the *Castillo* court stated:

"Where, in a litigation matter, a retainer agreement calls for an attorney to be paid particular amounts at specified times, and there is a failure to pay when due, that attorney has a remedy; it is to ask to be relieved from the duty of further representation of the client.... '[In criminal matters] an attorney must continue with his services until he is released by the client or by the court; he may apply to the court for release from further service and for good cause shown may be released, but he may not abandon his representation at will, nor for considerations personal to himself.'"

*Id.* (quoting *People v. Murphy*, 35 Cal.App.3d 905, 111 Cal.Rptr. 295 (Ct.App.1973)) (other internal citations and footnotes omitted).

reasonably requested to do so will furnish grounds for the attorney to withdraw from the case."); *see also* D.C. Rule. 1.16 cmt. 8 (stating that a "lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning the timely payment of the attorney's fees"); *id.* cmt. 11 (indicating that a withdrawal which would otherwise be proper may be subject to leave of court); *Darby v. City of Torrance,* 810 F.Supp. 275, 276 (C.D.Cal.1992). There is, however, no indication in the counterclaim that the $10,000 requested was to pay for past-due fees, and thus the Court cannot make the factual assumption suggested by plaintiff.[20] *See Phillips,* 591 F.2d at 968. Moreover, defendants allege more than a threat to withdraw that was retracted after being paid $10,000. Defendants allege that plaintiff actually "refus[ed] to represent [defendants'] interests when [plaintiff] w[as] attorney of record for [Hazard]." *See* Counterclaim ¶¶ 39 & 60. An allegation that an attorney unilaterally refused to represent a client during ongoing litigation before that attorney had been released from representation by a court is sufficient to state a claim for professional malpractice and breach of fiduciary duty. *See People v. Castillo,* 233 Cal.App.3d 36, 284 Cal.Rptr. 382, 392 (Cal.Ct. App.1991). Accordingly, the Court denies plaintiff's motion to dismiss Counts IV and VIII of defendants' counterclaim.

### 1. Contract and Quasi–Contract Claims (Counts IX–XII)

#### a. Count IX

In Count IX, defendants assert that the retainer agreement expressly or impliedly

20. For the same reason, the Court cannot accept plaintiff's assertion that these counts should be dismissed for failure to allege cognizable damages. The Court does note, however, that defendants' reliance on *Giannini, Chin & Valinoti v. Superior Court,* 42 Cal.Rptr.2d 394 (Ct.App. 1995), for the proposition that an attorney is precluded from recovering fees from a client for legal representation undertaken after the attorney has breached his professional duty to that client, is unwarranted. The opinion in *Giannini* was ordered withdrawn from publication by the Supreme Court of California on December 14, 1995, and accordingly it may not be cited as precedent. *See* Cal. Rules of Court 976 & 979. Moreover, the Court notes that, even had the

provided that plaintiff would use "reasonable care, skill, and diligence" in acting as defendants' attorneys in return for defendants' promise to pay attorney's fees for services rendered. Counterclaim ¶ 65. Defendants further allege that plaintiff breached this portion of the contract by engaging in the conduct described in the first eight counts of the counterclaim, and that they were damaged in the approximate amount of $700,000. *Id.* ¶¶ 64 & 66–68.

 A contract between an attorney and a client to provide legal representation in exchange for fees includes an implied agreement by the attorney to deal in good faith and to perform with reasonable skill. *See O'Neil v. Bergan,* 452 A.2d 337, 342 (D.C. 1982) (citing *Kirsch v. Duryea,* 21 Cal.3d 303, 146 Cal.Rptr. 218, 578 P.2d 935, 938 (Cal. 1978) (*en banc* )). "Whether a complaint is based on tort or breach of contract, however, 'the liability of an attorney for failure to properly perform his duties is governed by the [same] general standard of care ....'" *Id.* (quoting *Lysick v. Walcom,* 258 Cal. App.2d 136, 65 Cal.Rptr. 406, 414 (Ct.App. 1968)). Accordingly, defendants' breach of contract claim, to the extent it relies on the supposedly tortious conduct alleged in Counts I—VIII, survives to the extent that those counts survive the motion to dismiss and fails to the extent that those counts fail.[21]

#### b. Count X & XI

 Count X alleges that the entire retainer agreement is subject to rescission because it is an illegal contract. *See William J. Davis, Inc. v. Slade,* 271 A.2d 412, 415

opinion not been withdrawn, it did not stand for the broad proposition which defendants attribute to it. *See Giannini,* 42 Cal.Rptr.2d at 405.

21. Although defendants suggested at the December 4, 1997, hearing that they intended to base their breach of contract claim upon conduct such as plaintiff's alleged failure to include certain costs in the settlement, Count IX, as currently pled, does not encompass behavior beyond that alleged in Counts I–VIII. Accordingly, the Court did not consider the additional facts mentioned during the hearing but not included in the counterclaim in evaluating plaintiff's motion to dismiss.

(D.C.1970) (permitting rescission of a contract for illegality and restitution of payment when one of the parties is not *in pari dilecto* ); *People v. Barenfeld,* 203 Cal.App.2d 166, 21 Cal.Rptr. 501, 510–11 (Ct.App.1962) (same). Relying upon Business & Professions Code § 6125 and California Rule 3–300 (prohibiting the practice of law in California by those not admitted to the State Bar of California), defendants contend that the entire retainer agreement is unlawful and against public policy because the subject of the retainer agreement was plaintiff's representation of Hazard in California, yet at the time of the contract's formation none of plaintiff's attorneys had been admitted *pro hac vice* to practice law in California. Moreover, in Count XI, defendants request the money they have paid to plaintiff pursuant to the retainer agreement as a remedy.

▬ These counts are easily dismissed. The Supreme Court of California recently indicated that retainer agreements covering legal representation in California by out-of-state attorneys are enforceable where those attorneys have complied with the requirements of California Rule of Court 986 and are admitted *pro hac vice.*[22] *See Birbrower, Montalbano, Condon, & Frank v. Superior Court,* 17 Cal.4th 119, 130, 70 Cal.Rptr.2d 304, 949 P.2d 1, *cert. denied,* —— U.S. ——, 119 S.Ct. 291, —— L.Ed.2d —— (1998). In order to be admitted *pro hac vice,* however, an attorney must first have been retained by a client. *See* California Rule of Court 983.[23] Defendants' interpretation of the law would, therefore, put an out-of-state attorney seeking to represent a client in California in an impossible position: he would be unable to enter into a valid retainer agreement until he had been admitted *pro hac vice,* but he would also be barred by Rule 983 from being admitted *pro hac vice* until he was retained by a client. Because defendants' claim of rescission rests entirely on this erroneous theory which, if approved, would result in out-of-state attorneys being unable to practice law in California, the Court dismisses Count X with prejudice.[24] *See Birbrower,* 17 Cal.4th at 138, 70 Cal.Rptr.2d 304, 949 P.2d 1 (indicating that a fee agreement involving an out-of-state attorney becomes illegal when the attorney performs legal services in violation of § 6125, not when the agreement is signed); *see also Spanos v. Skouras Theatres Corp.,* 364 F.2d 161 (2d Cir.1966) (*en banc* ), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966). Count XI also is dismissed with prejudice because it is based entirely upon the alleged illegality of the retainer agreement. *See* Defs.' Opp'n to Pl.'s Mot. To Dis. Counterclaim, at 14–15.

## CONCLUSION

For all the foregoing reasons, the Court defers decision of the motion to dismiss for lack of personal jurisdiction pending an evidentiary hearing, denies the motion to transfer, and grants in part and denies in part plaintiff's motion to dismiss the counterclaim. An appropriate Order accompanies this Opinion.

## *ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that resolution of the motion to dismiss filed by defendants Colleen Coffman and Coffman Specialties is deferred pending an evidentiary hearing to be conducted on the jurisdictional issue. It hereby further is

ORDERED, that the motion to transfer filed by defendants James Coffman ("James"), Coffman Construction ("Construction"), and R.E. Hazard ("Hazard"), a California limited partnership, is denied without prejudice. It hereby further is

---

**22.** The Court concludes that California law applies to these counts because the unauthorized practice of law is treated slightly differently in D.C. and California. *Compare* Cal. Bus & Prof. Code § 6125, *with* D.C. Ct.App. Rule 49. California has the more significant interest in protecting its citizens from the unauthorized practice of California law.

**23.** Rule 983 provides:

A person who is not a member of the State Bar of California but who is a member in good standing of and eligible to practice before the bar of any United States court or of the highest court in any state ... and who has been retained to appear in a particular cause pending in a court of this state, may ... be permitted ... to appear as counsel *pro hac vice* ....

**24.** Plaintiff was admitted *pro hac vice* on or about January 18, 1995. Counterclaim ¶ 11.

ORDERED, that plaintiff's motion to dismiss the counterclaim filed by James, Construction, and Hazard is granted in part and denied in part. It hereby is

ORDERED, that Counts I, II, III, V, and VI of the counterclaim are dismissed without prejudice. It hereby further is

ORDERED, that Count VII of the counterclaim is dismissed. It hereby further is

ORDERED, that Count IX of the counterclaim is dismissed to the extent that it relies on claims and conduct in the preceding counts which are dismissed, and dismissed without prejudice to the extent that it relies on claims and conduct in the preceding counts which are dismissed without prejudice. Plaintiff's motion to dismiss is denied with respect to that portion of Count IX relying on the claims in Counts IV and VIII. It hereby further is

ORDERED, that Counts X and XI of the counterclaim are dismissed. It hereby further is

ORDERED, that if defendants wish to file an amended counterclaim, they are granted until October 23, 1998, in which to do so.

SO ORDERED.