In re Cleo BELMAR and Patrick Belmar, Debtors.

Cleo Belmar and Patrick Belmar, Plaintiffs,

v.

John Garza, et al., Defendants.

Bankruptcy No. 00–01847.
Adversary No. 02–10091.

United States Bankruptcy Court, District of Columbia.

Oct. 26, 2004.

Jeffrey M. Sherman, Hall Estill, Washington, DC, for plaintiffs.

Theresa M. Hummel, Eccleston & Wolf, PC, Washington, DC, for defendants.

## DECISION REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, JR., Bankruptcy Judge.

This decision addresses the parties' cross-motions for summary judgment for the alleged legal malpractice, breach of contract, and breach of fiduciary duty of John Garza. The plaintiffs' claims are also asserted against Garza's law firm, Garza, Regan & Associates, but the law firm's liability is based on Garza's conduct, and for ease of discussion the court will address the issues as though Garza and his firm are one and the same. The court will deny the plaintiffs' motion for partial summary judgment, grant the defendants' motion for summary judgment with respect to the legal malpractice claim, and deny the defendants' motion for summary judgment on plaintiffs' breach of contract and breach of fiduciary duty claims for the following reasons.

I

Cleo and Patrick Belmar (the "Belmars"), the plaintiffs in this action, filed a petition under Chapter 7 of the Bankruptcy Code (11 U.S.C.) in the United States Bankruptcy Court for the District of Columbia on April 20, 2000 (Case No. 00–00777). The Belmars retained John Garza and Garza, Regan & Associates to represent them in those proceedings for a flat fee of $1,000.00. The flat fee did not include the cost of defending against lift stay motions that might be filed during the course of the Chapter 7 proceedings.

On June 1, 2000, Conti Mortgage Corporation ("Conti"), the mortgage holder on the plaintiffs' real property located at 215 T Street, N.W., Washington D.C. (the "Property"), filed a motion with the Bankruptcy court to modify the automatic stay to permit Conti to foreclose on the Property (hereinafter "Lift Stay Motion") (Case No. 00–00777, D.E. No. 9). Garza received a copy of that motion and the notice of opportunity to object on or about June 1, 2000. A copy of the motion and notice of opportunity to object was sent by first class mail to the Belmars on May 31, 2000. *See* Notice of Motion and Certificate of Service (Case No. 00–00777, D.E. No. 10, filed June 1, 2000). The deadline for filing an opposition to the Lift Stay Motion was June 14, 2000, and a hearing on the Motion was scheduled for June 29, 2000.

The Belmars believed that Conti's records were inaccurate and that the Lift Stay Motion was predicated on Conti's incorrect assertion that the Belmars were behind on their mortgage payments. Accordingly, the Belmars decided they would challenge Conti's Lift Stay Motion and foreclosure efforts. On June 6, 2000, Garza spoke with the Belmars regarding a possible opposition to the Lift Stay Motion. The Belmars failed to appear for a June 7, 2000 meeting to discuss the matter with Garza. On June 12, 2000, Garza sent a letter to the Belmars discussing a possible opposition to the Lift Stay Motion, requesting that they provide Garza with information relevant to an opposition, and advising the plaintiffs to give the matter their immediate attention. The first in-person meeting between the parties to discuss the opposition took place on June 20, 2000, several days after the deadline for filing an opposition to the Lift Stay Motion had passed. The Belmars paid Garza a fee of $750.00 to defend against Conti's

foreclosure efforts, which included a defense against the Lift Stay Motion.

Garza did not file a response to the Lift Stay Motion on or before June 14, 2000, nor did he file a motion for an extension of time within which to file an opposition to the Lift Stay Motion. The Chapter 7 trustee did not oppose the Lift Stay Motion. On June 21, 2000, there being no opposition and the deadline for filing oppositions having passed, the court granted Conti's Lift Stay Motion.

Garza did not file an opposition to the Lift Stay Motion until June 22, 2000 (the "Opposition") (Case No. 00–00777, D.E. No. 14). Because the court had already granted the motion, however, the Opposition was not taken into consideration and the hearing scheduled for June 29, 2000, was cancelled. Garza was aware that failing to timely file an opposition to the Lift Stay Motion could result in a default against his clients and in the cancellation of the hearing.

Because no hearing was held, Garza was unable to pursue his original plan of negotiating with Conti's counsel in the courthouse at the time of the hearing. The plaintiffs allege and Garza concedes that leverage Garza would have otherwise had in settlement negotiations with Conti was lost when the motion was granted by default and the hearing cancelled. Conti was free to sell the Property at foreclosure after entry of the order granting the Lift Stay Motion.

On September 15, 2000, the Belmars received a notice of foreclosure from Conti informing the Belmars that Conti would foreclose on the Property on October 12, 2000. At some point between September 15, 2000, and October 3, 2000, the attorney-client relationship between the parties was severed.

The Belmars subsequently retained new counsel, who on October 9, 2000, filed a motion to vacate the June 21 Order granting the Lift Stay Motion ("Motion to Vacate") (Case No. 00–00777, D.E. No. 25). The Chapter 7 trustee did not join in the Motion to Vacate. This court denied the Motion to Vacate on October 10, 2000. In its order denying the Motion to Vacate, the court commented upon the merits of the Belmars's objection to the Lift Stay Motion, and determined that the Belmars had not in their original opposition nor in their Motion to Vacate stated any bankruptcy law reason for denying the Lift Stay Motion (Case No. 00–00777, D.E. No. 27, entered October 11, 2000).

To stay the foreclosure, the Belmars commenced a new bankruptcy case under Chapter 13 of the Bankruptcy Code, Case No. 00–01847, the case in which this adversary proceeding is being pursued. The Belmars converted their Chapter 13 case to one under Chapter 11 of the Bankruptcy Code, and a plan of reorganization was successfully confirmed on October 3, 2001. *See* Order (Case No. 00–01847, D.E. No. 91)

## II

The court first addresses the defendants' motion for summary judgment. For purposes of that analysis, the court views the evidence in the light most favorable to the plaintiffs.

## A. Legal Malpractice and Breach of Fiduciary Duty Claims

 Given the similarity in law governing legal malpractice actions and breach of fiduciary duty claims, this court will address the plaintiffs' legal malpractice and breach of fiduciary duty claims together. District of Columbia law requires a legal malpractice plaintiff to establish (1) the existence of an attorney-

client relationship; (2) the applicable standard of care; (3) a breach of that standard of care; and (4) a legally cognizable harm. *See Smith v. Haden,* 872 F.Supp. 1040, 1044 (D.D.C.1994). Similarly, to state a claim for breach of fiduciary duty the plaintiffs must establish that (1) the defendants owed the plaintiffs a fiduciary duty; (2) that the defendants breached that duty; and (3) that the breach proximately caused an injury.[1] *See Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.,* 24 F.Supp.2d 66, 75 (D.D.C.1998).

### 1. There was an attorney-client relationship in place at the time the Lift Stay Motion was due

■ Viewing the evidence in the light most favorable to the plaintiffs, in defending against the defendants' motion for summary judgment the plaintiffs have met their burden of showing that there was an attorney-client relationship between the parties on June 14, 2000, the deadline for filing an opposition to the Lift Stay Motion. The parties do not dispute that the plaintiffs retained Garza to represent them in the Chapter 7 bankruptcy case, case No. 00–00777. Nor do the parties dispute that Garza undertook the defense of the Lift Stay Motion in conjunction with his efforts to reach a settlement with Conti. The parties discussed the Lift Stay Motion on June 6, 2000, and arranged for a meeting to discuss an opposition to the Lift Stay Motion. Although the defendants' initial retainer agreement did not include an agreement for the defense of lift stay motions, and payment of the additional retainer may not have been made to Garza until after June 14, 2000, the court is satisfied that the parties extended the scope of their relationship to include a defense of the Lift Stay Motion prior to June 14, 2000. Although the plaintiffs were to pay a retainer for additional services beyond those covered by the flat fee, Garza has merely shown that this was part of the agreed upon relationship, not that such payment was a condition precedent to the existence of the attorney-client relationship.

■ By showing the existence of an attorney-client relationship, the plaintiffs have also met their burden of showing that Garza owed the plaintiffs a fiduciary duty because "[a]ttorneys unquestionably stand in a fiduciary relationship to their clients for matters related to their legal representation of their clients." *See Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.,* 24 F.Supp.2d at 75, n. 10.

As discussed in more detail below, the parties *do* dispute whether the Belmars failed to cooperate and communicate with Garza in a timely and efficacious manner such that they interfered with Garza's ability to adequately defend the Belmars against the Lift Stay Motion. This does not, however, negate the existence of an attorney-client or fiduciary relationship between the parties at the time in question. Rather, it raises a question of contributory negligence on the part of the Belmars.

### 2. The Standard of Care

#### a. The same standard of care applies to all three causes of action

■ Although the plaintiffs purport to state three separate causes of action—

---

1. Although plaintiffs seeking compensatory damages for a breach of fiduciary duty must demonstrate that the breach caused an actual injury, plaintiffs who are unable to demonstrate actual injury may still be entitled to a disgorgement of fees. *See Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.,* 24 F.Supp.2d at 75.

legal malpractice, breach of contract, and breach of fiduciary duty—District of Columbia law calls for this court to evaluate these claims according to the same standard of care.[2] District of Columbia law provides that if the "underlying malpractice claims fails [sic], tort and contract claims arising from the same transaction must also fail." *Macktal v. Garde*, 111 F.Supp.2d 18, 22 (D.D.C.2000) (citing *O'Neil v. Bergan*, 452 A.2d 337 (D.C. 1982)); *see also Asuncion v. Columbia Hospital for Women*, 514 A.2d 1187, 1191 (D.C.1986) (holding that "[a]lthough contract and tort claims arising out of the same incident theoretically have different requirements of proof and assessments of damages, as well as different rules governing assignability of claims and periods of limitation, we have noted that, in professional malpractice cases, alleged negligence and breach of contract are typically premised on the same duty of care and, as a consequence, should typically lead to the same legal result"); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 97 F.Supp.2d 8, 11–12 (D.D.C.2000) (holding that because a plaintiff's claim for breach of contract essentially restated the professional negligence and breach of fiduciary duty claims, the plaintiff's inability to prove the professional negligence claim should cause the contract and tort claims predicated on the same conduct as the professional negligence claim to also fail). Thus, although the court's analysis focuses on the standard of care in the context of the plaintiffs' legal malpractice and breach of fiduciary duty claims, it is equally applicable to the plaintiffs' breach of contract claim.

### b. The defendants breached the standard of care applicable to an attorney faced with a filing deadline by failing to timely file or seek an extension of time in which to file, but that is the only breach that occurred

In the present case, the plaintiffs claim that the defendants had a duty to timely file an opposition to the Lift Stay Motion or, alternatively, to seek an extension of time within which to file such an opposition. Garza violated that duty by missing the filing deadline and allowing the court to grant the Lift Stay Motion by default.

▉ The defendants argue that the plaintiffs' failure to offer expert testimony to establish the standard of care applicable to Garza under these circumstances is fatal to the plaintiffs' legal malpractice claim against the defendants. Indeed, it is the general rule in legal malpractice actions that "the plaintiff must present expert testimony to establish the standard of care by which the attorney's conduct is measured." *Shapiro, Lifschitz & Schram v. R.E. Hazard, Jr.*, 97 F.Supp.2d at 12. Under the common knowledge exception to that rule, however, a legal malpractice plaintiff is excused from presenting expert testimony if "the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *O'Neil v. Bergan*, 452 A.2d at 341. Permitting the entry of a default judgment against a client falls within the common knowledge exception. *See Kaempe v. Myers*, 367 F.3d 958, 966 (D.C.Cir.2004). Accordingly, the plaintiffs are excused from presenting expert testimony to establish the standard of care applicable to an attorney faced with a filing deadline,

---

**2.** Although the analysis of the applicable standard of care is the same for all three causes of action, the necessary showing of harm or injury under the three causes of action is somewhat different to the extent the plaintiffs seek nominal damages or a disgorgement of legal fees. This will be addressed in more detail later in this opinion.

which, if missed, will lead to a default judgment against his client. The court concludes that there is no genuine issue as to the standard of care owed by the defendants under such circumstances and there is no genuine issue that the defendants breached that standard of care by failing to timely file an opposition or seek an extension of time in which to file such an opposition. This breach of the standard of care likewise constitutes a breach of Garza's fiduciary duty to the plaintiffs.

In sum, viewing the evidence in their favor, the plaintiffs have shown a breach of the standard of care because Garza did not do one of the specific tasks he was hired to do. As discussed in parts c. and d., below, Garza defends that he believed that negotiations would be more productive than outright opposition of the motion or, alternatively, that the Belmars only clearly communicated their wish that Garza file a formal opposition to the Lift Stay Motion *after* the filing deadline had passed, but there remain genuine issues of fact regarding those defenses. Moreover, those matters go to the issue of whether Garza's failure to timely file was either excused or justified, that is, the factual dispute of whether there was an agreement timely to file, and the affirmative defense of justification for failure to comply if there was such an agreement. The fact that these defenses are available to the defendants does not alter the court's conclusion that a failure to file a timely opposition to the Lift Stay Motion, or seek an extension of time in which to do so, establishes a breach of the standard of care in the first instance. Such a showing constitutes a *prima facie* showing of negligence for which no expert testimony is required, which then shifts the burden to Garza to establish reasons why his conduct was nevertheless justified or somehow excused.

 Although the plaintiffs are excused under the common knowledge exception from offering expert testimony to establish the standard of care as to Garza's duty to timely file an opposition or seek an extension of time in which to file, the plaintiffs' complaint alleges conduct on the part of Garza that extends beyond that which led the court to grant the Lift Stay Motion and treat it as unopposed. In addition to filing late and failing to seek an extension of time, the plaintiffs allege that Garza: (1) failed to inform the debtors of the circumstances surrounding the foreclosure; (2) knowingly gave the debtors inaccurate information regarding the foreclosure; and (3) failed to obtain or seek reconsideration of the Court's Order Modifying the Stay. *See* Compl. at ¶ 30. Although not raised in their initial complaint, the plaintiffs also support their claim for breach of fiduciary duty with the allegation that the defendants failed "to ensure the entry of the Belmars' discharges after the extended period within which to bring a § 727 action had expired." Plaintiffs' Motion for Partial Summary Judgment, Pls. Br. at 15 (D.E. No. 32, filed March 11, 2003).[3]

The plaintiffs have failed to present any expert testimony establishing the applicable standard of care for an attorney faced with the wide range of circumstances that were present in this case. The mere fact that Garza committed one act falling within the common knowledge exception does not excuse the plaintiffs from presenting expert testimony to establish the standard of care for other alleged conduct upon which the plaintiffs seek to base their mal-

---

3. Once the time expired for filing objections to discharge under 11 U.S.C. § 727, the Belmars were entitled to a discharge. Prior to entry of the discharge, a filing by the Belmars of a new case (to obtain a new automatic stay) would have raised an issue of whether the pending case (Case No. 00–00777) barred the new case.

practice claim. Having failed to offer any expert testimony in these proceedings, the plaintiffs' malpractice claim must rest solely on the significance of Garza's failure to timely file an opposition to the Lift Stay Motion or to seek an extension of time in which to do so.

Likewise, at the May 6, 2003 hearing on these cross-motions for summary judgment, the plaintiffs' counsel argued that Garza "gutted" his own negotiation strategy by allowing the default to enter against the Belmars. If the plaintiffs' chief complaint is that Garza was careless in the formulation and execution of his negotiation strategy with Conti, however, then the fact that Garza allowed a default judgment to enter against the Belmars is, in fact, *not* the only conduct which must be looked at to determine the applicable standard of care in addressing that chief complaint. If the plaintiffs wish to predicate their negligence claim on Garza's incompetent handling of negotiations with Conti, then expert testimony is required to establish the applicable standard of care for an attorney in similar circumstances seeking to resolve such a matter through such negotiations. By failing to submit any expert testimony, the Plaintiffs have limited their claim to one which must stand or fall on the significance of the defendants' failure to timely file an opposition and/or seek an extension of time in which to do so.

### c. There remains a genuine issue of material fact as to whether Garza's failure to timely file an opposition is excused or justified by Garza's pursuit of ongoing negotiations with Conti at the time the opposition was due

▮ The record reflects that Garza believed negotiations with Conti were more likely to yield a favorable result for the Belmars than an adjudication on the merits of the Lift Stay Motion. The record further reflects that the Belmars did not have any defenses that were likely to prevail against Conti in an adjudication on the merits of the Lift Stay Motion. This suggests that Garza's strategy, which seems to have subordinated the filing of a formal and timely opposition to the Lift Stay Motion to negotiations with Conti, may have been justified. Whether Garza's perhaps justifiable emphasis on negotiations is sufficient to excuse Garza's failure to timely file an opposition and any resulting breach to which that failure gave rise, is a genuine issue at dispute in this matter and is more properly reserved for resolution by the finder of fact at trial.[4]

### d. There remains a genuine issue of material fact concerning whether the plaintiffs were contributorily negligent in allowing the Lift Stay Motion to go unopposed

When viewed out of context, Garza's failure to timely file an opposition appears to be a clear breach of the standard of care for an attorney faced with a filing deadline. There is evidence in the record, however, to suggest that it was actually the Belmars' own conduct—not mere carelessness on Garza's part—that caused Garza to not file a timely opposition to the Lift Stay Motion. The defendants have offered evidence to show that the plaintiffs contributed to the untimeliness of the filing by: (1) failing to respond to communications from Garza to the plaintiffs; (2) failing to appear at a scheduled meeting to discuss a

---

4. This was identified by the plaintiffs as a disputed question of material fact in support of their opposition to the Defendants' motion to dismiss. *See* Statement of Facts (D.E. No. 13 at ¶¶ 6, 12, filed September 30, 2002).

response to the Lift Stay Motion; and (3) failing to provide Garza with proof of payment of their mortgage. The plaintiffs argue that notwithstanding any alleged negligent conduct on their part, Garza always had the "last clear chance" to avoid the default judgment by simply filing an opposition to the Lift Stay Motion. As such, the plaintiffs argue that any alleged contributory negligence on their part is excused. The court disagrees. The plaintiffs have offered no support for the proposition that the last clear chance doctrine—which seems to assume an impending threat of physical harm not present in the instant action—has any application to any of the claims asserted in this action. Although a finder of fact may agree that Garza's failure to timely file an opposition is not excused by the Belmars's alleged contributory negligence, it remains a genuinely disputed issue more appropriately resolved by the finder of fact at trial.

3. **The injury alleged by the plaintiffs is too speculative to support a legal malpractice action and precludes plaintiffs from seeking most forms of damages under their breach of fiduciary duty claim**

"As with any tort action, legal malpractice liability is predicated on a finding that the injury was proximately caused by the breach of duty." *Dalo v. Kivitz*, 596 A.2d 35, 41 (D.C.1991), quoted in *Thomas v. Powell*, 247 F.3d 260, 264 (D.C.Cir.2001). Likewise, a plaintiff seeking damages beyond a mere disgorgement of legal fees in an action for breach of fiduciary duty must show that the breach was the proximate cause of harm. *See*

*Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 24 F.Supp.2d at 75.

The plaintiffs do not assert that the court would have denied the Lift Stay Motion if Garza had filed a timely opposition. By contrast, the defendants have offered persuasive evidence that a timely-filed opposition would not have altered this court's decision to grant the Lift Stay Motion. Plaintiffs instead argue that the matter could have been resolved between the parties without the need for the court to rule on the motion, or that the plaintiffs might have converted their case from Chapter 7 to Chapter 13 while the stay remained in place. In short, the plaintiffs rely on factors separate and apart from the merits of their opposition to establish that they were harmed by its untimely filing.

Central to the plaintiffs' theory of harm is the allegation, and Garza's concession, that the Belmars lost leverage in settlement negotiations with Conti when the court granted the unopposed Lift Stay Motion. It is highly questionable whether, under District of Columbia law, the Belmars's alleged "loss of leverage" constitutes a legally cognizable harm in the absence of a showing that the opposition to the Lift Stay Motion, had it been timely filed, was meritorious and would have resulted in a more favorable outcome for the Belmars.[5]

District of Columbia courts have long recognized the need for legal malpractice plaintiffs to demonstrate that the attorney's alleged negligence adversely affected the malpractice plaintiff's ability to assert or benefit from an otherwise *meritorious*

---

**5.** Garza's concession that leverage was lost does not mean that such a loss constitutes a legally cognizable and compensable harm. Indeed, just as parties are unable to consent to the subject matter jurisdiction of a court

where it is otherwise lacking, the question of what constitutes a legally cognizable harm is not a question of fact for Garza to admit to or deny during the course of a deposition.

claim or defense in the underlying action. In *Niosi v. Aiello,* 69 A.2d 57 (D.C.App. 1949), the court stated the rule as follows:

> The rule to be applied in a case where an attorney is accused of negligence in the conduct of litigation is that such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be; or that if conduct of an attorney with respect to litigation results in no damage to his client the attorney is not liable. Unless a party has a good cause of action against the party proposed to be sued, the first party loses nothing by the conduct of his attorney even though the latter were guilty of gross negligence.

*Id.* at 60. *See Macktal v. Garde,* 111 F.Supp.2d 18, 22 at n. 6 (D.D.C.2000) ("The clear rule of *Niosi* and its progeny is that in order to maintain a legal malpractice action in the District of Columbia, plaintiff must demonstrate not only that the alleged malpractice was the proximate cause of the injury suffered, but also that the action for which the plaintiff had sought the attorney's services was a good cause of action.") (granting plaintiff's motion to dismiss); *Mount v. Baron,* 154 F.Supp.2d 3, 10 (D.D.C.2001) (granting 12(b)(6) motion to dismiss legal malpractice claim because "the plaintiffs [ ] failed to allege any facts showing that but for the defendants' negligence, there would have been a different verdict."); *McCord v. Bailey,* 636 F.2d 606, 611–12 (D.C.Cir.1980) (attorney's failure to assert defense on behalf of criminal defendant did not cause client cognizable harm because assertion of the defense would not have altered the trial's outcome).

The plaintiffs' theory of harm, which asks this court to find actionable malpractice notwithstanding the weakness in the legal arguments that were available to the Belmars in opposition to Conti's Lift Stay Motion, is dubious at best. The plaintiffs have not identified and this court has found no legal precedent in the District of Columbia for allowing such claims.

Other jurisdictions have expressed concern that claims of this nature are simply too speculative to support a malpractice action. In *Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart,* 237 Ga. App. 27, 514 S.E.2d 836 (1999), for example, a legal malpractice plaintiff argued that he suffered a "lost opportunity" to settle as a result of his attorney's failure to file a meritless appeal. Although decided on different grounds, the *Dow Chemical* court aptly noted that:

> It is possible that the mere filing of an appeal, although meritless, could create uncertainty in the mind of the appellee and thus induce him to settle for a lesser amount, and that the failure to file such an appeal could damage the appellant by depriving him of the opportunity to settle. However, it is highly questionable whether such speculative damages can properly serve as the basis for a malpractice action.

*Id.* at 29–30, 514 S.E.2d 836. *See also Macktal v. Garde,* 111 F.Supp.2d at 22 ("[a]lthough a cause of action may exist under some circumstances against an attorney for failure to negotiate a reasonable settlement of a case, plaintiff has given this Court no authority which would allow an attorney to be sued for lost settlement value in a case which could not have been won on the merits.").

Similar reasoning applies to the case at bar. Indeed, the plaintiffs' theory of harm asks this court to engage in pure speculation as to what might have happened to the Belmars had they retained greater "leverage" vis-a-vis Conti up until and/or

during the hearing on Conti's Lift Stay Motion.[6]

The plaintiffs have offered no evidence showing that Conti would, in fact, have agreed to a settlement or entered into a consent order had Garza timely opposed the motion and the matter remained set for hearing. The plaintiffs have not attempted to quantify the leverage that was supposedly lost, and have provided no guidance on this point such that a reasonable jury could determine what, if any, impact that leverage or loss of leverage had on negotiations or on subsequent events related to the Belmars's bankruptcy proceedings.[7]

■ Even if District of Columbia law did not require the plaintiffs to show that they would have prevailed in their opposition to Conti's motion, the fact remains that the injury alleged by the plaintiffs is grossly speculative. A legal malpractice plaintiff "must show that his attorney's negligence caused a legally cognizable injury. Although it is sufficient to show that the [malpractice plaintiff] could have 'fared better' in reaching the ultimate goal sought, or that there would have been a difference in the trial's outcome, more is required than speculation." *Chase v. Gilbert*, 499 A.2d 1203, 1212 (D.C.App.1985). *See also Zoerb v. Barton Protective Services*, 851 A.2d 465, 471–72 (D.C.App.2004). Therefore, any injury that the plaintiffs allege they suffered by losing leverage in negotiations with Conti is too speculative to support a legal malpractice claim.

■ The foregoing analysis requires judgment in the defendants' favor on plaintiffs' legal malpractice claim. As previously stated, however, clients who demonstrate a breach of fiduciary duty may seek a disgorgement of legal fees without proving that the breach caused them actual injury. *See Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr.*, 24 F.Supp.2d at 75; *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C.Cir.1996) (although no actual harm may result from a breach of fiduciary duty the overall value of legal services rendered may be diminished). Because there remain genuine issues in dispute on the question of liability for plaintiffs' breach of fiduciary duty claim, and the plaintiffs are not foreclosed from seeking damages in the form of a disgorgement of legal fees, the defendants' motion for summary judgment on plaintiffs' fiduciary duty claim must be denied.

## B. Breach of Contract

### 1. Garza breached his contract with the Belmars, but the breach may be excused due to the Belmars' own conduct

■ To establish a breach of contract, plaintiffs must demonstrate that "a contract existed, that plaintiff[s] performed [their] contractual obligations, that defen-

---

6. In its March 28, 2002 order denying defendants' motion to dismiss (D.E. No. 17), this court noted that the plaintiffs' opposition to the Lift Stay Motion might not have been barred under F.R. Bankr.P. 9011. Rule 9011 imposes a duty of good faith upon attorneys to not file papers advancing frivolous arguments. This court has determined that the arguments available to the Belmars on June 14, 2000, and ultimately advanced (although out of time) in opposition to the Lift Stay Motion had no merit. It is unnecessary for purposes of these cross-motions for the court to rule on whether an attorney filing such papers violates Rule 9011.

7. This analysis addresses whether the plaintiffs have met their burden to show that Garza's conduct caused a legally cognizable injury or harm—an essential element for establishing *liability* in a legal malpractice action. It is not, as plaintiffs' counsel has suggested, a mere question of quantifying or calculating the amount of damages.

dant[s] breached the contract, and that plaintiff[s] suffered damages due to the breach." *Park v. Arnott*, 1992 WL 184521, *4 (D.D.C.1992). Viewing the evidence in the light most favorable to the plaintiffs, in defending against the defendants' motion for summary judgment the plaintiffs have met their burden of showing that Garza entered into a contract with the plaintiffs to defend against Conti's foreclosure efforts, and that the terms of that contract included the filing of an opposition to the Lift Stay Motion. The plaintiffs have likewise met their burden of showing that Garza's failure to timely file an opposition to the Lift Stay Motion constituted a breach of that contract. Although plaintiffs have demonstrated that they performed their contractual obligation to pay Garza's fee in exchange for his defense against Conti's foreclosure efforts, there remains a genuine dispute as to whether the plaintiffs met their contractual obligation to adequately cooperate and communicate with Garza.

■ Finally, as discussed above, the plaintiffs have not met their burden of showing that they suffered actual harm or injury as the result of the defendants' failure to timely file an opposition. Although this is fatal to the plaintiffs' legal malpractice claim, a plaintiff who establishes a breach of contract is entitled to nominal damages even if he fails to prove actual damages or injury. *See Roth v. Speck*, 126 A.2d 153, 155 (D.C.1956) ("where a plaintiff proves a breach of contractual duty he is entitled to damages; however, when he offers no proof of actual damages or the proof is vague and speculative, he is entitled to no more than nominal damages."); *Chandler & Taylor Co. v. Norwood*, 14 App.D.C. 357 (1899) ("[f]rom every breach of contract the law will imply at least nominal damages"); *Garcia v. Llerena*, 599 A.2d 1138, 1142 (D.C.1991) ("[w]here

the plaintiff proves a breach of contractual duty but the proof of damages is vague or speculative, he is entitled only to nominal damages."); Richard A. Lord, Damages for Breach of Contract, 24 Williston on Contracts § 64:6 (4th ed.2004)("[a]n unexcused failure to perform a contract is a legal wrong [and][a]n action will therefore lie for the breach although it causes no injury.... [t]he same result follows where the actual injury, although real and perhaps serious, cannot be measured under the rules requiring that harm caused shall be foreseeable and not speculative."); Restatement (Second) of Contracts, § 346 (2004).

■ Accordingly, to the extent that Garza's failure to timely file an opposition to the Lift Stay Motion was not excused by the plaintiffs' own failure to communicate and cooperate with Garza, the plaintiffs are entitled to nominal damages for Garza's breach of contract.

## III

To recapitulate, the court's rulings on the defendants' motion for summary judgment are these. First, the plaintiffs have failed to meet their burden of showing that the defendants' alleged negligence was the proximate cause of a legally cognizable harm. Accordingly, the defendants in this matter are entitled to summary judgment in their favor with respect to the legal malpractice claim asserted by the plaintiffs in their complaint.

Second, because the plaintiffs may be entitled to a disgorgement of legal fees as well as nominal damages if they establish liability on their breach of fiduciary duty and breach of contract claims (notwithstanding the plaintiffs' failure to show actual harm), and because there remain genuine issues in dispute with respect to both of these claims that require resolution by the finder of fact at trial, the defendants'

motion for summary judgment on the plaintiffs' claims for breach of fiduciary duty and breach of contract must be denied.

## IV

To the extent the plaintiffs' breach of contract and breach of fiduciary duty claims survive the defendants' motion for summary judgment, the court must address the plaintiffs' motion for partial summary judgment. Viewing the evidence in the light most favorable to the defendants, there remain genuine issues of material fact that must be resolved by the finder of fact at trial. Accordingly, the plaintiffs' motion for partial summary judgment is denied.